# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEIRA VAUGHAN, JACQUELINE
WOODARD, SASHE OMOGIATE,
and MAKEDA ROOTS, individually
and on behalf of all other similarly
situated individuals,

     Plaintiffs,

v.                                            Case No.: **1:14-cv-00914-SCJ**

PARADISE ENTERTAINMENT
GROUP, INC. d/b/a MAGIC CITY,
-M- ENTERTAINMENT &
CONSULTANT SERVICE, INC.,
M-ENTERTAINMENT PROPERTIES,
LLC, MARVIN L. BROWN,
individually, and MICHAEL BARNEY,
SR., individually,

     Defendants.

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

   I.   PLAINTIFFS ARE EMPLOYEES UNDER THE FLSA ................................ 2

      A.   LEGAL STANDARD FOR DETERMINING EMPLOYEE STATUS ..................... 3

      B.   MAGIC CITY CONTROLLED PLAINTIFFS' WORK ............................................ 5

         1.   Magic City controls entertainers' work through written rules ................................ 5

         2.   Magic City controls entertainers' manner of dancing ............................................. 6

         3.   Magic City controls entertainers' work through fees ............................................. 7

         4.   Magic City controls work through fines and other discipline ................................. 8

         5.   Magic City controls entertainers' appearance ....................................................... 9

      C.   MAGIC CITY CONTROLS PLAINTIFFS' PROFIT AND LOSS ........................... 10

      D.   MAGIC CITY'S INVESTMENT EXCEEDS PLAINTIFFS' ................................... 11

      E.   ENTERTAINING AT MAGIC CITY IS NOT SKILLED WORK ........................... 12

      F.   THERE IS NO PRESET DURATION OF EMPLOYMENT ................................... 13

      G.   ENTERTAINERS ARE INTEGRAL TO MAGIC CITY ......................................... 14

   II.   THE "OFFSET" DEFENSE AND COUNTERCLAIMS FAIL ......................... 15

      A.   DEFENDANTS' OFFSET DEFENSE MUST BE DENIED ..................................... 17

        1. Defendants do not include the amounts in their gross receipts .......................... 18

        2. Additional factors show that the amounts in question are tips .......................... 20

      B.   DEFENDANTS' COUNTERCLAIMS MUST BE DENIED .................................... 21

        1. Defendants' breach of contract and good faith and fair dealing counterclaims must be denied ................................................................................................................ 21

        2. Defendants' unjust enrichment counterclaim must be denied ........................... 23

   III.   DEFENDANTS BROWN AND BARNEY ARE EMPLOYERS ................................. 24

i

# TABLE OF AUTHORITIES

## CASES:

*Adams v. Countrywide Home Loans Inc.*,
  2013 WL 1963759 (N.D. Ga. May 9, 2013) ................................................23

*Antenor v. D & S Farms*,
  88 F.3d 925 (11th Cir. 1996) ........................................................................25

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
  450 U.S. 728, 740 (1981) .............................................................................21

*Butler v. PP&G, Inc.*,
  2013 WL 5964476 (D. Md. Nov. 7, 2013) ....................................................3,

*Clincy v. Galardi S. Enter., Inc.*,
  808 F. Supp.2d 1326 (N.D. Ga. 2011).....................................................*passim*

*Harrell v. Diamond A. Entm't, Inc.*
  992 F. Supp. 1343 (M.D. Fla. 1997) .......................................................*passim*

*Hart v. Rick's Cabaret Int'l, Inc.*,
  967 F.Supp.2d 901 (S.D.N.Y. 2013) .......................................................*passim*

*Henderson v. 1400 Northside Dr., Inc.*,
  2015 WL 3823995 (N.D. Ga. June 19, 2015) ..................................17, 18, 20

*Jeffcoat v. State, Dep't of Labor*,
  732 P.2d 1073, 1077 (Alaska 1987) .............................................................14

*Jenkins v. BAC Home Loan Servicing, LP*,
  822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011)..............................................23

*Martin v. Circle C Invest., Inc.*,
  1991 WL 338239 (W.D. Tex. Mar. 27, 1991).............................................3, 8

*Martin v. Priba Corp.*,
  1992 WL 486911 (N.D. Tex. Nov. 6, 1992) ........................................3, 8, 11

*McFeeley v. Jackson St. Entm't, LLC*,
  47 F. Supp. 3d 260 (D. Md. 2014)............................................................3, 11

*Melton v. Round Table Rests., Inc.*,
  1971 WL 900 (N.D. Ga. Nov. 8, 1971) .........................................................18

*Morse v. Mer Corp.*,
  2010 WL 2346334 (S.D. Ind. June 4, 2010) ........................................3, 5, 14

*Reich v. ABC/York-Estes Corp.*,
  157 F.R.D. 688, 670 (N.D. Ill. 1994) ............................................................17

*Reich v. ABC/York-Estes Corp.*,
  1997 WL 264379 ....................................................................................17, 18

*Reich v. Circle C. Invest., Inc.*,
  998 F.2d 324 (5th Cir. 1993) .................................................................3, 5, 10

*Reich v. Priba Corp.*,
  890 F.Supp. 586 (N.D. Tex. 1995) ...................................................3, 8, 11, 17

*RLI Ins. Co. v. Banks*,
  2015 WL 400540 (N.D. Ga. Jan. 28, 2015) ..................................................21

*Russell v. Promove, LLC*,
  2007 WL 2274770 (N.D. Ga. Aug. 7, 2007)..................................................25

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722, 729 (1947) ...............................................................................4

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308, 1311-12 (11th Cir. 2013).........................................3, 4, 7, 14

*Stevenson v. Great Am. Dream*,
  2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) .......................................*passim*

*Tenn. Coal Co. v. Muscoda Local No. 123*,
    321 U.S. 590, 602-03 (1944) ........................................................................21

*Thompson v. Linda and A., Inc.*,
    779 F. Supp. 2d 139 (D.D.C. 2011) ...........................................................3, 13

*Thornton v. Crazy Horse, Inc.*,
    2012 WL 2175753 (D. Alaska June 14, 2012) ....................................3, 17, 20

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290, 302 (1985) ............................................................................22

*Verma v. 3001 Castor, Inc.*,
    2014 WL 2957453 (E.D. Pa. June 30, 2014) ..............................................3, 5

*Wingrove v. D.A. Techs., Inc.*,
    2011 WL 7308492 (N.D. Ga. Feb. 3, 2011) .................................................22

## **INTRODUCTION**

This case is about an illegal scheme under which all five Defendants operated a strip club called Magic City, employed the Plaintiffs who danced there as entertainers, failed to pay them any wages whatsoever, and charged them fines and fees as a condition of employment.  Hoping to disguise this illegal scheme and offer a purported justification for their failure to pay wages, Defendants labeled Plaintiffs "tenants" or "independent contractors."   In truth, Plaintiffs' work for Magic City bore no resemblance to a tenancy and there was nothing independent about it.  Magic City controlled nearly every aspect of Plaintiffs' work, making them economically dependent on the club and, thus, employees entitled to wages under the Fair Labor Standards Act ("FLSA").

In an attempt to hedge their bets, Defendants argue that, even if Plaintiffs are employees, Defendants can offset their wage obligations against money Plaintiffs received from Defendants' customers.  Defendants are wrong.  Plaintiffs received tips, not wages.  Defendants never once claimed that money as theirs, as an employer must do with monies it uses to pay wages.  Regardless, the FLSA does not allow employers to pass their wage obligations on to their customers.  Neither any "contract" nor the amount of tips received dictates a different outcome.

Finally, although Defendants contest that all five Defendants would be

1

employers, they do not contest that Defendant Brown or Defendant Barney would be employers if Plaintiffs are found to be employees under the FLSA.

Accordingly, the Court should grant Plaintiffs' instant motion for summary judgment that: (1) they are employees under the FLSA; (2) that Defendants' affirmative defense and counterclaims requesting an offset fail as a matter of law; and (3) that Defendants Brown and Barney jointly employed Plaintiffs.[1]

## ARGUMENT[2]

## I.    PLAINTIFFS ARE EMPLOYEES UNDER THE FLSA

Courts—including those in this District and Circuit—have long held that entertainers are employees of the strip clubs where they work. *See, e.g.*, *Stevenson*, 2013 WL 6880921; *Clincy*, 808 F. Supp. 2d 1326; *Harrell v. Diamond A Entm't*,

---

[1] Plaintiffs intend to pursue the issue of joint employer status as to the remaining Defendants at trial.  Thus, unless otherwise stated, references to "Magic City" or "the club" are meant to reference any Defendant that is ultimately found and/or agreed to be liable as an employer in this litigation. Notably, this Court can properly resolve the question of ***employee*** status without resolving the question of ***employer*** status as to each Defendant. *See Stevenson v. Great Am. Dream*, 2013 WL 6880921, at *2 (N.D. Ga. Dec. 31, 2013) (citing *Clincy v. Galardi S. Enter., Inc.,* 808 F.Supp.2d 1326, 1329 (N.D. Ga. 2011).

[2] Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  If the movant shows the absence of such fact questions, the burden shifts to the nonmovant to show a genuine issue of material fact.   *Stevenson*, 2013 WL 6880921, at *1.  "A mere scintilla of evidence [from nonmovants] will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Id.* (internal quotations omitted).

2

*Inc.*, 992 F. Supp. 1343 (M.D. Fla. 1997); *see also Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260 (D. Md. 2014); *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Butler v. PP&G, Inc.*, 2013 WL 5964476 (D. Md. Nov. 7, 2013); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139 (D.D.C. 2011); *Morse v. Mer Corp.*, 2010 WL 2346334 (S.D. Ind. June 4, 2010); *Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D. Tex. 1995); *Martin v. Priba Corp.*, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); *Martin v. Circle C Invest., Inc.*, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991). The facts underlying this vast body of case law are, in all material aspects, nearly identical to those here, warranting a finding of employee status.

### A. LEGAL STANDARD FOR DETERMINING EMPLOYEE STATUS

To determine employee status, courts look to the "economic reality" of the relationship between parties and whether that relationship demonstrates dependence. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013). As this Circuit has explained, "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path

of an employee.'"  *Id.* (quoting *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947).  Courts have viewed the following factors as a guide to determine the economic realities of working relationships in FLSA cases:

1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
4) whether the service rendered requires a special skill;
5) the degree of permanency and duration of the working relationship; and
6) the extent to which the service rendered is an integral part of the alleged employer's business.

*See, e.g.*, *Scantland*, 721 F.3d at 1311-12.  Notably, the overarching question of whether a worker is in business for herself or is economically dependent on someone else's business for the chance to render services involves an examination of the totality of the circumstances; no one factor listed above is determinative.  *Id.*

Critically, the circumstances must be viewed in light of the FLSA's broad definition of employment, under which one who is "suffered or permitted" to work is employed.  U.S. Dep't Labor, Adm'r Interpretation, No. 2015-1 ("A.I. 2015-1") at 3 (Ex. B to Lukas Decl.)  "The 'suffer or permit' standard was specifically designed to ensure as broad a scope of statutory coverage as possible," (*id.*) and as the United States Department of Labor recently reiterated, "applying the economic realities test in view of the expansive definition of 'employ' under the [FLSA],

4

most workers are employees." (*Id.* at 2.)  The Plaintiffs here are no different.[3]

## B. MAGIC CITY CONTROLLED PLAINTIFFS' WORK

The undisputed facts articulated in Plaintiffs' accompanying Statement of Facts ("SOF"), incorporated here by reference, show that Magic City exercised immense control over Plaintiffs (also referred to as "entertainers" or "dancers").

### 1.  Magic City controls entertainers' work through written rules

"The presence of club-imposed written and unwritten guidelines for dancers' conduct indicate control and weighs in favor of employee status." *Verma*, 2014 WL 2957453, *6*; *see, e.g.*, *Stevenson*, 2013 WL 6880921, at *4; *Hart*, 967 F. Supp. 2d at 913-20; *Clincy*, 808 F. Supp. 2d at 1344-45; *Morse*, 2010 WL 2346334 at *3; *Harrell*, 992 F. Supp. at 1349-50.  And so it is here.  Magic City distributed documents to entertainers upon hire, which list numerous club expectations, including those governing entertainers' attitude, body shape and size, scheduling, arrival to and departure from the club and payments to club and its agents.  (SOF ¶¶ 93-128.)   The documents also list behavior Magic City considers to "violations," such as not dancing on stage or leaving without permission, and "Rules" or "Rules and Policies," including requiring entertainers to work the entire

---

[3] The mere relabeling of Plaintiffs from "independent contractors" to "tenants" partway through the class period (SOF ¶ 6) does not change the legal analysis.  *See Reich v. Circle C.*, 998 F.2d at 326; *see also* A.I. 2015-1 at n.2.

length of a shift, not to being a dance in the middle of a song, and to perform while on stage.  (*Id.*)  These are just some examples.  The numerous documents and their self-emphasized bolded and capitalized content are canvassed in the accompanying SOF and exhibits referenced therein.  (*Id.*)  Notably, while there may not always be strict enforcement or that not all listed guidelines are always enforced does not undercut the club's control. The presence of the rules and threatened punishment— such as fines, suspension, and termination for violations of the same (*id.* ¶¶ 93-128, 155-61)—are enough to show control.  *See, e.g.*, *Hart*, 967 F. Supp. 2d at 918 ("The mere threat…. realistically operated as a sword of Damocles over the dancers, helping ensure dancer compliance with the Guidelines.")  As explained by one of Magic City's managers: Q: "You just intended to scare the dancers into acting… a certain way?" A: "Yes." (SOF ¶ 128.)

### 2.  Magic City controls entertainers' manner of dancing

The manner and times at which entertainers "dance" are dictated by Magic City.  Independent contractors would have the freedom to choose how, when and whether to dance on stage; the entertainers at Magic City do not.  Rather, they are called to stage by the club's disc jockey ("DJ"), who determines how many entertainers can be on stage at one time; cannot dance until their name is called even if they missed their turn; can be fined for missing a turn or leaving stage

before a song is done, and must disrobe based on the amount of money thrown on stage. *(Id.* ¶¶ 129-141.) These are classic examples of a club's control over its entertainers' work. *See, e.g.*, *Clincy*, 808 F. Supp. 2d at 1333 ("[D]ancers may refuse to dance on stage when called, but may be fined…."); *Harrell*, 992 F. Supp. at 1349-1350 (as to stage rotation); *see also* A.I. 2015-1 at 14 ("If the nature of a business requires a company to exert control over workers to the extent that [the employer] has allegedly done, then that company must hire employees, not independent contractors." (quoting *Scantland*, 721 F.3d at 1316)).

### 3. Magic City controls entertainers' work through fees

Magic City further controls its entertainers by requiring that they pay "house fees," charging them a higher fee the later they arrived. (SOF ¶¶ 146-48.) While this undoubtedly had the effect of pressuring entertainers to come to work earlier, the club also overtly threatened higher fees if not enough entertainers did not come into work during the dayshift or if an entertainer did not work enough shifts during the week. *(Id.* ¶¶ 151-52 (listing, among other things, text messages from the club to entertainers making threats such as, "we need 5 more girls to work dayshift today or bar fee will increase"); ¶ 153 ("Zachery [a manager] informs entertainers that there is a $300 charge if they only work on a Monday….")); *see, e.g.*, *Stevenson*, 2013 WL 6880921, at *4 (listing house fees among examples of

7

control); *Clincy*, 808 F. Supp. 2d at 1334.[4]

### 4.  Magic City controls work through fines and other discipline

The authority to discipline is clear evidence of a club's control over its entertainers.  *See, e.g., Hart*, 967 F. Supp. 2d at 917-19; *Clincy*, 808 F. Supp. 2d at 1332; *Martin v. Circle C*, 1991 WL 338239, at *3 ("Numerous rules were promulgated… and offenders were fined for infringements.").  At Magic City, management dispensed discipline through fines for various conduct, including not working enough shifts or certain days,[5] not getting dressed and out of the dressing room within one hour, and missing mandatory meetings.  (SOF ¶¶ 155-57, 170-73, 193.)  Magic City also distributed a "violation list" to its entertainers listing "punishment" of "suspension," "termination," or "no stage" for listed violations—

---

[4] Magic City also requires entertainers to pay  "tip outs" each shift to the DJ and house mom (i.e., dressing room attendant). (SOF ¶ 162.)

[5] Importantly, a club's control over when entertainers work and related scheduling requirements indicate control and employee status.  *See e.g.*, *Clincy*, 808 F.Supp.2d at 1344-1345; *Thompson*, 779 F.Supp.2d at 148; *Reich v. Priba*, 890 F. Supp. at 592; *Harrell*, 992 F. Supp. at 1350; *Martin v. Priba*, 1992 WL 486911, *4.  Here, the great level of control is apparent as discussed above.  (*See supra*.)  Defendants will undoubtedly argue that entertainers could, within the framework of days and shifts set by Defendants, choose when to work. This does not negate the expansive control discussed above. *See* A.I. 2015-1 ("[W]orkers' control over the hours when they work is not indicative of independent contractor status."); *Stevenson*, 2013 WL 6880921, at *4 ("Defendants argue that the entertainers could set their own schedules. But this was true in several cases where the court found the entertainers were nonetheless employees. Control over scheduling is minimal compared to all of the elements of the job that [the club] controlled.").

for example, "leaving without permission or before 3:00AM." (*Id.* ¶ 108.) In fact, Magic City has put entertainers on "probation" and has suspended and fired them. (*Id.* ¶¶ 162-68; *see also* ¶ 103 (listing "evaluation" criteria of, among other things, "attitude," and "hair and make-up" and "sanctions" of "30 days to comply," "60 days to comply," "suspension and fine," and "termination").) In sum, entertainers must abide by club rules or suffer the consequences.

### 5.  Magic City controls entertainers' appearance

If entertainers were independent contractors, they would be able to choose what to wear, when to wear it, and how to otherwise present their chosen image to customers. Magic City does not afford entertainers that discretion. Rather, it requires that entertainers fit the ***club's*** image (SOF ¶ 179), instructing its entertainers on what to wear or how to do their hair and to "tone up" and giving them deadlines to "get it tight." (*Id.* ¶¶ 180-81, 186-87.) The club puts out memoranda explaining that entertainers must keep their bodies in good shape in order to continue to work at the club, and make clear that maintaining appearance (including "weight," "chest size," "cup size," "waist size," "hip size," and "body type") are requirements of the job. (*Id.* ¶¶ 119-22, 179-82.) In fact, the club has fired and suspended entertainers for gaining weight. (*Id.* ¶¶ 183-85.) These examples of control limit entertainers' discretion to choose how to be attractive to

customers.  All of this runs counter to independence.  *See, e.g.*, *Hart*, 967 F. Supp. 2d at 919 ("[A] club's… instructions to a dancer of the need to lose weight or otherwise cease performing [and] request that an entertainer take time off to lose some weight… are unavoidably means of exercising control over her."); *Clincy*, 808 F.Supp.2d at 1332; *Reich v. Circle C*, 998 F.2d at 327.

In light of the totality of the circumstances described above, there is no question that the entertainers at Magic City are employees as a matter of law.  The most meaningful parts of the exotic dancing occupation—when and how to work, appearance, and the manner of dance and disrobing—are all controlled by Magic City, not the entertainers.  This factor weighs in favor of employee status.

### C. MAGIC CITY CONTROLS PLAINTIFFS' PROFIT AND LOSS

"In considering whether a worker has an opportunity for profit or loss, the focus is whether the worker's managerial skill can affect his or her profit and loss." A.I. 2015-1 at 7.  Here, entertainers exercised no managerial skill in order to increase the work available to them or resultant profits.  Rather, Magic City controlled the majority of factors contributing to profit or loss.  For example, in order for entertainers to make any money on a given night at Magic City there must be customers in the club with money to spend.  Magic City is the entity that controls the factors related to customer volume and spending.  (SOF ¶¶ 194-222.)

Magic City determines which customers can enter the club, imposes a cover charge at its discretion, furnishes and maintains control over the aesthetics in the club, maintains the bar at the club, and handles and pays for the marketing which draws customers in, including social media, print, radio, and a promotor.  (*Id.* ¶¶ 196-212, 217-22, 228-31.)  In contrast, an independent contractor would have control over these determinants of her profits.  *See Stevenson*, 2013 WL 6880921, at *4 ("[The club] bore the vast majority of overhead costs [and] also had more of an impact on potential profits. It was 'primarily responsible for attracting customers…, decisions about marketing and promotions for the Club, its marketing and promotions for the Club, its location, its maintenance, aesthetics, and atmosphere, and food and alcohol availability and pricing are made by' [the club]." (quoting *Clincy*, 808 F. Supp. 2d at 1346)); *Reich v. Priba*, 890 F. Supp. at 593 ("The club controls… advertising, without which… entertainers could not survive.").

What is more, Magic City determines whether entertainers can be in the club at all for the chance to earn money, determines the minimum amount customers must pay for a dance (eliminating entertainers' ability to fully negotiate rates), and requires entertainers to pay the club.  (SOF ¶¶ 144, 146-68, 194-95.)  This all weighs in favor of employee status.  *See, e.g.*, *McFeeley*, 47 F. Supp. 3d at 270-71.

### D. MAGIC CITY'S INVESTMENT EXCEEDS PLAINTIFFS'

Defendants provide the huge sums necessary to operate the club, including the building in and stages on which entertainers dance, the furnishings and food and liquor for customers, and pay for waitstaff, management, DJs, advertising, music, phones, and utilities, among other things.  (*See* SOF ¶¶ 233-238.)  This vast capital outlay—exceeding ███████████ in each year at issue for Defendant Paradise Entertainment alone (in contrast to entertainers' comparatively minimal attire expenses and fees and fines) shows that the club, not entertainers, puts profits and the potential for loss on the line.  *(Id.* ¶¶ 233-40.)  As one court stated:

> Defendant would have us believe that a dancer [ ] could hang out her own shingle, pay nothing in overhead,-no advertising, no facilities, no bouncers,- and draw in a constant stream of paying customers. A dancer [ ] risks little more than her daily "tip out" fee, the cost of her costumes, and her time. That a dancer may increase her earnings by increased 'hustling' matters little. As is the case with the zealous waiter at a fancy, four star restaurant, a dancer's stake, her take and the control she exercises over each of these are limited by the bounds of good service; ultimately, it is the restaurant that takes the risks and reaps the returns.

*Harrell*, 992 F. Supp. at 1352.  In short, "but for [D]efendants' provision of the lavish work environment, the dancers at the club likely would earn nothing." *Martin v. Priba*, 1992 WL 486911, *5.  This factor weighs in Plaintiffs' favor.

### E. ENTERTAINING AT MAGIC CITY IS NOT SKILLED WORK

Courts consistently hold that any skill required to be a nude dancer like Plaintiffs here does not rise to the level of "business skills, judgment, and

12

initiative" to show economic independence.  A.I. 2015-1 at 10; *see e.g.*, *Stevenson*, 2013 WL 6880921, at *5 ("Taking your clothes off on a nightclub stage and dancing provocatively are not the kinds of special skills that suggest independent contractor status."); *Hart*, 967 F. Supp. 2d at 920 ("Although efforts by dancers to cultivate customers surely enhanced the money the customers paid them, such 'hustling' is not skilled work. And every court to consider such a 'hustling' argument by a strip-club proprietor has rejected it." (citing cases)).  The same is true here.  Magic City does not require managerial skill of any kind; rather, appearance and the ability to take off one's clothes without hesitation are the driving factors when it comes to hiring.  (SOF ¶¶ 260-72.)  Entertainers need not have prior dance or strip club experience and are not even required to dance during the hiring process.  (*Id.*)  These facts cut against a finding of specialized skill.  *See Thompson*, 779 F. Supp. 2d at 150 ("While the Court does not rule out the possibility of the rare case involving a form of nude dancing that reaches the level of high art, requiring extensive skill…, the defendants' argument barely merits consideration here because nothing in the record indicates that 'artistic ability' had anything to do with eligibility….").  Again, this factor weighs in Plaintiffs' favor.

### F.  THERE IS NO PRESET DURATION OF EMPLOYMENT

"Generally employees are hired for indefinite periods, whereas independent

contractors work for periods established by contract." *Jeffcoat v. State, Dep't of Labor*, 732 P.2d 1073, 1077 (Alaska 1987).  Further, contracts for lengthy terms indicate employee status.  *Scantland*, 721 F.3d at 1318.  Further still, [e]ven if the working relationship lasts weeks or months instead of years, there is likely some permanence or indefiniteness to it as compared to an independent contractor…." A.I. 2015-1 at 12.  All of this supports employees status in this case because: (1) entertainers at Magic City work at the club with no pre-specified end date or contract completion date; (2) the club's scheduling requirements of certain days per week indicate a level of permanency; (3) as with any typical employment relationship, entertainers' employment is at will with the club being able to terminate the relationship at any point; and (4) many entertainers worked at the club for years.  (SOF ¶¶ 273-75.)[6]  This factor, too, weighs in favor of Plaintiffs.

## G. ENTERTAINERS ARE INTEGRAL TO MAGIC CITY

Magic City is a strip club.  Put bluntly, strippers are integral to strip clubs. *Morse*, 2010 WL 2346334, at *6 ("[E]xotic dancers are obviously essential to the success of a topless nightclub." (quoting *Harrell*, 992 F. Supp. at 1352)).  No reasonable jury could conclude otherwise given that customers come to the club to

---

[6] The club also has exclusivity rules which it makes known to its entertainers by, among other things, requiring them to agree in writing not to work for other clubs. (SOF ¶¶ 105, 276-79.)  "Exclusivity is relevant."  *Scantland*, 721 F.3d at 1319.

see entertainers; the club is known for its entertainers; the club's trademark includes the silhouette of a voluptuous woman; the club's marketing is replete with images of scantily-clad or nearly nude women; the club is designed around a stage on which entertainers dance; there are approximately 100-150 entertainers on the roster at any one time; and, as Defendant Brown stated, "You know, the more of them [entertainers], the more our patrons." (SOF ¶¶ 241-59.) "No reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers." *Hart*, 967 F. Supp. 2d at 921.

In sum, the economic realities overwhelmingly weigh in favor of employee status. Summary judgment should be granted for Plaintiffs.

## II.   THE "OFFSET" DEFENSE AND COUNTERCLAIMS FAIL

The Plaintiffs in this case received no wages whatsoever from Defendants. (SOF ¶ 280.) Rather, Plaintiffs' sole income was money given directly to them by Magic City's customers. (*Id.* ¶¶ 281, 284.) No Defendant ever claimed any portion of this money in its gross receipts; nor did the club otherwise claim the money or consider it its own. (*Id.* ¶¶ 286-89.)

Now, however, facing substantial wage liability, Defendants suddenly want to claim the money entertainers received from customers as a wage that can satisfy the club's obligations under the FLSA. Specifically, Defendants state, as an

15

affirmative defense, "Plaintiffs' claims against Defendant for not paying them at least the federal minimum wage are barred because even assuming Defendant was legally obligated to pay Plaintiffs the applicable federal minimum wage… they earned at least the applicable federal minimum wage for every hour worked."  (2d Am. Answer 6, ECF No. 55; 3d Am. Answer 2, ECF No. 76.)  Defendants have also brought counterclaims for breach of contract, breach of implied duties of good faith and fair dealing, and unjust enrichment, seeking as damages that include the tips Plaintiffs received from customers, which Defendants refer to as "service charges" or "performance fees."  (2d Am. Answer 15-19, ECF No. 55 (requesting a "repayment or setoff of all amounts… received through service charges and tips"); 3d Am. Answer 2.)

Defendants' affirmative defense and counterclaims are nothing more than a transparent request for a "do-over" now that litigation has revealed their illegal misclassification and nonpayment scheme.  Defendants want to re-characterize the amounts entertainers received from customers as a "service charges" that can offset unpaid wages and, in doing so, argue that the nature of the money is determined by contract, not law, and that a legal judgment against Defendants in this case would be unjust.  These arguments are unquestionably contrary to law—they must be rejected and the affirmative defense and counterclaims built on the same denied.

## A. DEFENDANTS' OFFSET DEFENSE MUST BE DENIED

The FLSA regulation states that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the Act." 29 C.F.R. § 531.55. The question, then, is whether the money entertainers receive from a strip club's customers falls within the category of "sums" that can be used to offset the FLSA's minimum wage requirements. Nearly every court to examine this issue on the merits has rejected the club's offset argument. *See e.g.*, *Henderson v. 1400 Northside Dr., Inc.*, 2015 WL 3823995, at *3-4 (N.D. Ga. June 19, 2015) ("[T]he fees received by dancers for entertainment provided on the main stage, the main floor, the VIP lounge, and the VIP rooms were obviously 'tips,' and so they may not be used to offset the Defendant's minimum wage obligations under the FLSA…. many courts have considered this question in the context of adult entertainment and have agreed with the Plaintiffs' position."); *Hart*, 967 F. Supp. 2d at 926-35; *Harrell*, 992 F. Supp. at 1358; *Reich v. ABC/York-Estes Corp.*, 1997 WL 264379, at *5-7; *Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 688, 670 (N.D. Ill. 1994); *Reich v. Priba Corp.*, 890 F. Supp. at 594-95; *Thornton*, 2012 WL 2175753, at *9. This Court should do the same.

17

### 1. Defendants do not include the amounts in their gross receipts

The FLSA does not permit an offset for service charges or other similar sums where the employer does not include those amounts in its gross receipts:

> [S]ervice charges and other similar sums **which become part of the employer's gross receipts** are not tips for the purposes of the [FLSA]. **Where such sums** are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the [FLSA].

29 C.F.R. § 531.55 (emphasis added); *Henderson*, 2015 WL 3823995, at *4 ("[F]or a fee to constitute a service charge and therefore be properly applied against an establishment's statutory minimum-wage duty, it must have been included in the establishments gross receipts.") (quoting *Hart*, 967 F.Supp.2d at 929); *Reich v. ABC/York-Estes Corp.*, 1997 WL 264379, at *5 ("[A]n employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA."). Where that money, however, does not enter into the employer's gross receipts and remains a tip, it is "the property of the employee… [and t]he employer is prohibited from using an employee's tips…for any reason other than that which is statutorily permitted.…" *See* 29 C.F.R. § 531.52; *Melton v. Round Table Rests., Inc.*, 1971 WL 900, at *4 (N.D. Ga. Nov. 8, 1971) ("[O]nly when there is a fixed service charge prescribed by the employer **<u>and</u> which becomes a part of it's** *[sic]* **gross receipts** that such charges may be

18

converted into wages….” (emphasis added)).

Here, Magic City has admitted that it does not record any amounts entertainers receive from customers in its gross receipts. (SOF ¶¶ 286, 288 (Q: “Does [the club] record any of that money on its gross receipts?” A: “No….”).) To be clear, all Defendants have admitted that they did not record money entertainers received from customers in their gross receipts. (*Id.* ¶ 287.) The complete failure to include in amounts in their gross receipts is fatal to Defendants’ affirmative defense of offset. An employer simply cannot satisfy its wage obligations merely by directing its customers to pay its employees; rather, the payments must come from the employer’s own accounts. If this were not the case, employers in any service industry would simply direct their customers to pay the employees directly under the guise of a “service charge.” Such a scheme would be tremendously beneficial to employers, who could avoid paying both corporate and payroll tax on such amounts, while at the same time still claiming to satisfy their wage obligations. Here, Defendants did just that. They admittedly never treated the money as their own or paid taxes on it. The money never belonged to Defendants and Defendants never acted like it did. (SOF ¶ 288 (Q: “The club doesn’t consider any of the money entertainers receive from patrons to be income to the club, does it?” A: “No.”).) Defendants cannot now claim the money as their own in an after-

the-fact attempt to manufacture an escape hatch from their liability in this lawsuit. The money is a tip, not service charge, and cannot offset wage liability.

### 2. Additional factors show that the amounts in question are tips

Gross receipts aside, the other undisputed facts of this case militate towards finding that the money in question is a tip, not service charge. For example, when customers pay entertainers, they pay the entertainer directly and not through a middleman at the club. (SOF ¶ 284.) This, alone, defeats Defendants' argument. 29 C.F.R. § 531.55 ("Where such sums *are distributed by the employer to its employees*, however, they may be used in their entirety to satisfy the monetary requirements of the [FLSA]." (emphasis added)); *see Henderson*, 2015 WL 3823995, at *4 ("'[S]ervice changes' must be distributed by the employer in order to count towards wages.' Here, most of the payments… were made directly to dancers…. those payments may not be classified as 'service charges.'" (quoting Hart, 967, F. Supp. 2d at 929)). Further, Magic City merely sets a minimum amount customers are to pay for a dance, does not handle the money entertainer receive or a retain a portion thereof, and makes no effort to track the number of dancers or amount of money entertainer receive. (SOF ¶¶ 280-90.) All of these facts indicate that the money in question is a tip. *See Thornton*, 2012 WL 2175753, at *9.

20

## B. DEFENDANTS' COUNTERCLAIMS MUST BE DENIED

Defendants' counterclaims must also be denied.  First and foremost, as to the breach of contract counterclaim, it is well established that any contract to "waive, release, and hold harmless" an employer under the FLSA is void as against public policy.  The counterclaim for lack of good faith and fair dealing must be denied on this basis, as well.  Finally, as to the unjust enrichment claim, any enrichment through receipt of back wages in this case would be mandated by judgment and enrichment through retention of tips would not be unjust.

### 1. Defendants' breach of contract and good faith and fair dealing counterclaims must be denied

"A claim for breach of contract requires a valid contract, material breach of the terms of that contract, and damages arising from the breach." *RLI Ins. Co. v. Banks*, 2015 WL 400540, at *2 (N.D. Ga. Jan. 28, 2015).

Here, although Plaintiffs signed "agreements" as a condition of commencing employment at Magic City (SOF ¶¶ 98-121), not one of those agreements is valid because, as Defendants explain in their counterclaim, they purport to have Plaintiffs waive their right to bring any claims against the club.  (2d Am. Answer 15-19, ¶¶ 6, 11, 22, 24, ECF No. 55.)  FLSA rights cannot be so waived and, accordingly, such the "contracts" at issue are void as against public policy. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Tenn. Coal*

*Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944) ("Any custom or contract…like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.").

Further, there is no material breach. Defendants frame the alleged "breach" primarily as Plaintiffs not holding Defendants harmless. (2d Am. Answer 15-19, ¶¶ 6, 11, 22, 24, ECF No. 55).[7]   However, Plaintiffs cannot legally be held to any agreement to not challenge Defendants' classification of their status. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985); *see also Wingrove v. D.A. Techs., Inc.*, 2011 WL 7308492, at *1 (N.D. Ga. Feb. 3, 2011) (stating that even a stipulation to lack of FLSA coverage in a settlement agreement cannot waive FLSA rights).

Finally, damages resulting from Plaintiffs suing in this case are permitted by law and, accordingly, cannot support a breach of contract claim. 28 U.S.C. §§ 216(b), 260. Defendants' counterclaim must be denied.[8]

---

[7] Defendants also allege that Plaintiffs did not sign into work 100% of the time, did not pursue alternative dispute resolution prior to filing suit, worked at other clubs, and had responsibilities to comply with tax law.  (2d Am. Answer 13-17, ECF No. 55.)  It defies common sense to think any of these allegations could constitute a material breach given the circumstances surrounding entertainers' work for Defendants.  (*See generally* SOF.)

[8] "[T]o state a claim for breach of the implied covenant, the plaintiff must be found to have stated a claim for breach of contract (since the implied covenant cannot be

### 2.  Defendants' unjust enrichment counterclaim must be denied

Unjust enrichment exists where "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit…." *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011).

Here, the benefit at issue—the money Plaintiffs received from customers—was not conferred by Defendants.  (SOF ¶ 280 ("Magic city does not pay the entertainers any money for their work….").)  Rather, customers gave their own money directly to Plaintiffs.  (*Id.* ¶ 284.)  Thus, while Plaintiffs' benefited, it was not at Defendants' expense and so the unjust enrichment claim cannot succeed. *See Hart*, 967 F. Supp. 2d at 934-35 ("The Club] may not pursue a claim of unjust enrichment, because the performance fees did not come from the Club….").)[9]

---

breached independently of an express contract term)." *Adams v. Countrywide Home Loans Inc.*, 2013 WL 1963759, at *3 (N.D. Ga. May 9, 2013) (quotation omitted). Thus, for the reasons discussed above, the Court must deny Defendants' counterclaim for "breach of implied duties of good faith and fair dealing," which states Plaintiffs "acted with an improper motive when they agreed to independent contractor status and to hold harmless the club." (2d Am. Answer 17, ECF No. 55; 3d Am. Answer 2, ECF No. 76.)

[9] To the extent Defendants argue that they allowed entertainers to retain money from customers based on a contractual understanding that they were contractors, this argument also fails given that the "contracts" are unenforceable (*see supra*)

Finally, there is nothing inequitable about entertainers receiving unpaid wages in this case and retaining tips. "Equity and good conscience do not justify giving [the club] a do-over…. Having misclassified plaintiffs and therefore breached their statutory duties as employers, defendants may not avoid liability for such duties." *See Hart*, 967 F.Supp.2d at 934-35. Defendants' counterclaim fails.

## III.   DEFENDANTS BROWN AND BARNEY ARE EMPLOYERS

> [A] joint employment relationship generally [exists]…[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b)(3)). Here, there is no argument that Defendants Brown and Barney are "completely disassociated with respect to the employment" of entertainers at Magic City. In fact, quite the opposite. They hire entertainers and have authority over entertainers being disciplined, including firings. (SOF ¶¶ 53, 57, 86-87, 191.) "Brown oversees most operational decisions associated with Magic City, including management of Magic City employees and entertainers, enforcement of Magic City policies and procedures, and Magic City's scheduling, timekeeping, and/or payroll practices." (*Id.* ¶ 26.) Barney Senior describes

and because nothing in the "contracts" states that money from customers shall belong to Magic City should entertainers be found to be employees. (SOF ¶ 289.)

himself as "the corporate vine," works with Brown on all aspects of operating Magic City, and "has substantial responsibility over Magic City's promotion and marketing efforts." (*Id.* ¶¶ 51-69, 201.)  All of this amply demonstrates employer status.  *See Russell v. Promove, LLC*, 2007 WL 2274770, at *3 (N.D. Ga. Aug. 7, 2007) (listing, among factors contributing to employer status, the power to hire and fire and supervision and control of conditions of employment,[10] and explaining that "the overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA," and that "[e]ven if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply….") (quotations and citations omitted).  Critically, ***Defendants do not contest that Brown and Barney would be employers*** in the event Plaintiffs are found to be employees.  (SOF ¶ 291.) Accordingly, summary judgment should be granted for Plaintiffs on undisputed joint employer status of Defendants Brown and Barney.

Plaintiffs' motion for summary judgment must be granted.

---

[10] Importantly, the totality of the circumstance surrounding the economic realities governs the analysis.  *See Russell*, 2007 WL 2274770, at *3-4; *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) (applying eight economic realities factors).

DATE: July 30, 2015                    NICHOLS KASTER, PLLP

                                       /s Paul Lukas_____
                                       Michele R. Fisher, GA Bar No. 76198
                                       Paul J. Lukas, MN Bar No. 22084X*
                                       Anna Prakash, MN Bar No. 0351362*
                                       Rebekah L. Bailey, MN Bar No. 0389599*
                                       Ashley Thronson, MN Bar No.: 0395947*
                                       4600 IDS Center, 80 South 8th Street
                                       Minneapolis, MN 55402
                                       Telephone: (612) 256-3200
                                       Fax: (612) 215-6870
                                       fisher@nka.com
                                       aprakash@nka.com
                                       bailey@nka.com
                                       athronson@nka.com
                                       *admitted pro hac vice

                                       MAYS & KERR, LLC
                                       John Mays, GA Bar No. 986574
                                       Meredith Carter, GA Bar No. 325422
                                       235 Peachtree St. NE #202
                                       Atlanta, GA  30303
                                       Telephone: (404) 410-7998
                                       Fax: (404) 855-4066
                                       john@maysandkerr.com
                                       meredith@maysandkerr.com

                                       ATTORNEYS  FOR  PLAINTIFFS  AND
                                       THE COLLECTIVE

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**CERTIFICATE OF SERVICE**

***Vaughan et al. v. Paradise Entertainment Group, Inc. d/b/a Magic City, et. al.***
**Court File No.: 1:14-cv-00914-SCJ**

I hereby certify that on July 30, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically email notification to the following attorneys of record:

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated: July 30, 2015                    /s Paul J. Lukas
                                        Paul J. Lukas

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated: July 30, 2015                      **NICHOLS KASTER, PLLP**

/s/ Paul Lukas
Paul Lukas, MN Bar No. 22084X*
Michele R. Fisher, GA Bar No. 76198
Anna Prakash, MN Bar No. 0351362*
Rebekah L. Bailey, MN Bar No. 0389599*
Ashley Thronson, MN Bar No. 0395947*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
fisher@nka.com
aprakash@nka.com
bailey@nka.com
athronson@nka.com
*admitted pro hac vice

**MAYS & KERR, LLC**
John Mays, GA Bar No. 986574
Meredith Carter, GA Bar No. 325422
235 Peachtree St. NE #202
Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
john@maysandkerr.com
merideth@maysandkerr.com