# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEIRA VAUGHAN, JACQUELINE
WOODARD, SASHE OMOGIATE,
and MAKEDA ROOTS, individually
and on behalf of all other similarly
situated individuals,

     Plaintiffs,
                       Case No.: **1:14-cv-00914-SCJ**

v.

PARADISE ENTERTAINMENT
GROUP, INC. d/b/a MAGIC CITY,
-M- ENTERTAINMENT &
CONSULTANT SERVICE, INC.,
MARVIN L. BROWN, individually,
and MICHAEL BARNEY, SR.,
individually,

     Defendants.

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFFS' FINES, DOOR FEES, AND TIP-OUTS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION .............................................................................1

FACTUAL BACKGROUND............................................................2

I)   PLAINTIFFS HAVE ALWAYS SOUGHT TO RECOVER UNPAID MINIMUM
     WAGES AND OVERTIME PREMIUMS, FREE AND CLEAR. ...................................2

II)  DEFENDANTS REQUIRED PLAINTIFFS TO PAY TO WORK IRRESPECTIVE
     OF TIPS..................................................................................4

III) PLAINTIFFS DID NOT STIPULATE AWAY THEIR RIGHT TO RECOVER
     MINIMUM WAGES FREE AND CLEAR OF UNLAWFUL KICKBACKS.....................9

LEGAL STANDARD......................................................................10

LEGAL ARGUMENT ...................................................................11

I)   PLAINTIFFS' MINIMUM-WAGE DAMAGES INCLUDE RECOVERY OF
     UNLAWFUL KICKBACKS. ..................................................................11

II)  PLAINTIFFS ASSERT CLAIMS FOR UNPAID MINIMUM WAGES AND
     OVERTIME PAY. .............................................................................16

     A)   Plaintiffs Do Not Seek to Recover Pooled Tips..................................16

     B)   The Tip Pooling Cases Cited by Defendants Are Contrary to the
          Spirit and Intent of the FLSA.............................................................20

CONCLUSION .............................................................................23

# <u>TABLE OF AUTHORITIES</u>

**C**ASES

*Aguila v. Corp. Caterers II, Inc.*, 2016 WL 4196656 (S.D. Fla. Aug. 9, 2016)...........................................................................................17

*Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002)................12

*Brueningsen v. Resort Express Inc.*, 2015 WL 339671 (D. Utah Jan. 26, 2015)......................................................................................17–18

*Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578 (W.D. Tex. 1999).........12

*Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)......................................................................................16

*Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010) ...................................17

*Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071 (E.D. Tex. 2011) ..........12

*Hart v. Rick's Cabaret Int'l, Inc.,* 60 F. Supp. 3d 447 (S.D.N.Y. 2014)................13

*Henderson v. 1400 Northside Drive, Inc.*, No. 1:13-CV-3767-TWT, 2016 WL 3125012 (N.D. Ga. June 3, 2016)............................................................14

*Hughes v. Scarlett's G.P., Inc.*, No. 15-CV-5546, 2016 WL 454348 (N.D. Ill. Feb. 5, 2016).......................................................................19–20

*Ketner v. Branch Banking & Trust Co.*, 143 F. Supp. 3d 370 (M.D.N.C. 2015)......................................................................................12

*Labriola v. Clinton Entm't Mgmt., LLC*, No. 15 C 4123, 2016 WL 1106862 (N.D. Ill. Mar. 22, 2016)..........................................................19–20

*Levi Chicoine v. Gulliver's Tavern Inc.*, No. CV 15-216 S, 2016 WL 552469 (D.R.I. Feb. 10, 2016) ..................................................................19–20

*Malivuk v. Ameripark, LLC*, No. 1:15-CV-2570-WSD, 2016 WL 3999878 (N.D. Ga. July 26, 2016) ........................................................*passim*

*McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016).............14

*Meller v. Wings Over Spartanburg, LLC*, 2016 WL 1089382, (D.S.C. Mar. 21, 2016)................................................................................................17

*Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080 (9th Cir. 2016)......2, 21, 22

*Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. 2015)................11

*Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993) ................................13

*Reich v. Priba Corp*, 90 F. Supp. 586 (N.D. Tex. 1995) .........................................13

*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013)...........................11

*Stephenson v. All Resort Coach, Inc.*, 2013 WL 4519781 (D. Utah Aug. 26, 2013)................................................................................................17

*Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442 (4th Cir. 2015) ...................17

*Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 388 (1942) ........................21

*Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350 (N.D. Ga. 2009) .........10

## STATUTES, ORDINANCES, REGULATIONS AND RULES

29 U.S.C. § 203 .......................................................................................16, 18, 22

29 U.S.C. § 206 ............................................................................................11, 15

29 C.F.R. § 531.3 ................................................................................................11

29 C.F.R. § 531.32 ..............................................................................................11

29 C.F.R. § 531.35 ..........................................................................................2, 11

29 C.F.R. § 531.36 ..............................................................................................12

29 C.F.R. § 531.52 ....................................................................................2, 20, 21

## OTHER

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Mar. 10, 2006) ............13

## **INTRODUCTION**

This is a minimum wage case.  The longstanding applicable regulations make clear that employers must pay wages at the minimum rate, free and clear of unlawful kickbacks.  In other words, employers cannot pay wages with one hand and charge employees to work with the other.  Such a scheme causes net wages to fall below the required minimum.  Here, Defendants paid **no wages _and_** collected kickbacks from Plaintiffs in the form of mandatory fees to work, fines, and tip-outs (collectively "Club Charges").  Under these circumstances, Plaintiffs are entitled to recover unpaid minimum wages at the applicable rate ($7.25 an hour), *plus* recoupment of Club Charges they paid to work.  Both damages components are necessary to bring Plaintiffs' pay up to the applicable minimum rate.  Failure to include Club Charges in the calculation of Plaintiffs' back pay would permit Defendants to get away with precisely the type of kickback scheme the regulations sought to prevent: a net subminimum wage.

Despite Defendants' attempt to recast it as such, this is not a "tip-pooling" case.  In the tip-pooling actions Defendants' cite, employees—who always receive at least $7.25 an hour free and clear without additional charges—challenge their employers' control over their tips.  Under these circumstances, some "tip-pooling" cases hold that the Fair Labor Standards Act ("FLSA") does not provide

employees a private right of action to recover tips.  *See Malivuk v. Ameripark, LLC*, No. 1:15-CV-2570-WSD, 2016 WL 3999878, at *3 (N.D. Ga. July 26, 2016). Some hold the FLSA protects tips.  *Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1095 (9th Cir. 2016); *see also* 29 C.F.R. § 531.52.  This Court, however, need not reconcile this split of authority because Plaintiffs do not seek recovery of pooled tips and because Defendants never paid Plaintiffs any wages, much less wages at the minimum rate.

## FACTUAL BACKGROUND

### I)   PLAINTIFFS HAVE ALWAYS SOUGHT TO RECOVER UNPAID MINIMUM WAGES AND OVERTIME PREMIUMS, FREE AND CLEAR.

Plaintiffs filed this collective action against Defendants on March 31, 2014, alleging Defendants misclassified entertainers as independent contractors rather than employees, and as a result, violated the FLSA.  Plaintiffs' opening complaint made crystal clear that this practice denied entertainers of lawfully earned minimum wages free and clear of kickbacks.[1]  Under the Minimum Wage Cause of Action header, Plaintiffs' alleged:

> 39.   The minimum wage requirement must be satisfied "free and clear" of any deductions or "kickbacks." 29 C.F.R. § 531.35[.]
>
> . . . .

---

[1] Plaintiffs Third Amended Complaint later added overtime claims.  (3d Am. Compl. ¶¶86–94.)

2

42.    Defendants failed to pay Plaintiffs and the Collective *any* wages, much less free and clear minimum wages.

43.    In failing to provide wages at the minimum rate and in taking fees, fines, and wage payments from Plaintiffs and the Collective, Defendants violated the FLSA.

(Compl. ¶¶ 39, 42–43, ECF No. 1; *see also* 1st Am. Compl. ¶¶ 40, 43–33, ECF No. 6; 2d Am. Compl. ¶¶ 40, 43–44, ECF No. 8; 3d Am. Compl. ¶¶ 77, 80–81, ECF No. 72.)  The corresponding prayer for relief reads:

An award to Plaintiffs and those similarly situated for the amount of unpaid minimum wages and overtime wages owed free and clear, and liquidated damages[.]

(Compl. (g); *see also* 1st Am. Compl. (g); 2d Am. Compl. (g); 3d Am. Compl. ¶ 95(h).)

Plaintiffs alleged these kickbacks were made up of fines, fees, and tipouts:

**Magic City . . . requires that entertains pay the club as a precondition to working at the facility**.  It requires entertainers pay, for example, nightly 'house fees.' . . . . Magic City also imposes fines. . . . Magic City [also] requires them to tip out other workers, such as the house mom, at the end of each night.

(3d Am. Compl. ¶¶42–43, 45 (emphasis added).)  In answering, Defendants **admit** "that they charge the entertainers a fee to enter the club."  (Defs.' Ans. to 3d Am. Compl. ¶ 42, ECF No. 76.)  This case is about, and has always been about, recovering free and clear minimum wages, not recovering pooled tips.

## II)   DEFENDANTS REQUIRED PLAINTIFFS TO PAY TO WORK IRRESPECTIVE OF TIPS.

The evidence and testimony in this litigation substantiates Plaintiffs' allegations.

**House Fees (aka Bar Fees)**:  Plaintiffs paid a mandatory house fee at the beginning of their shift before they began working, and thus before they could receive any tips from customers.   (Currie Dep. 37:7–:16, Ex. A (testifying entertainers "had to pay prior to coming to work"); Pittman Dep. 39:18–40:12, 43:3, Ex. D (testifying to handing over $75 to $300 cash to pay the house fee in order to sign in at the beginning of her shift); *see also* Hambrick Dep. 16:18–:19, ECF No. 153; Hardin Dep. 16:17–17:2, ECF No. 158; Omogiate Dep. 34:5–35:11, ECF No. 161; Pace Dep. 24:12–:18, Ex. C; Smith Dep. 33:14–:20, Ex. E; Vaughan Dep. 37:7–:9, ECF No. 163.)   Defendants do not dispute this was a condition of Plaintiffs' work.  (Defs.' Ans. to 3d Am. Compl. ¶ 42, ECF No. 76; Pretrial Fact Stip. ¶ 31, ECF No. 236; Contract ¶ 1, ECF No. 132-31 ("The Fee must be paid in full by Participant as a condition precedent for Participant to have the right to engage in the Activities at the Premises.").)   Plaintiffs thus paid this money out of pocket.

**Fines**:  Plaintiffs testified that they were required to also pay outstanding fines at the beginning of their shifts before they would be permitted to work.

(Noble Dep. 39:3–:16, Ex. B (testifying that, after failing to work the minimum shifts required in a week and/or after missing a meeting, "you have to pay them $300" in addition to the house fee "**just to get in the building to work**" and further testifying to paying outstanding fines at the beginning of a shift "when you pay to go in to work," and explaining that "[**w]hat you owe you just pay out of pocket** and they put it in an envelope in the office downstairs." (emphasis added)); Pace Dep. 24:12–:18, Ex. C (testifying that upon signing in at the beginning of the shift, "[i]f you did not work a slow day, you would have to pay a fine, and that's it. If you missed a meeting, . . . you would have to pay a fine.  That was it."); *see also* Pittman Dep. 43:3–45:9, Ex. D (testifying to owing fines for staying in the dressing room too long or for missing a stage rotation); Pretrial Fact Stip. ¶ 36, ECF No. 236 ("Entertainers sometimes pay fines assessed to them by Magic City.").) Again, they paid this money out of pocket.

**Tip-outs to Magic City's Employees**:  Plaintiffs testified that Magic City required entertainers pay a mandatory minimum of $10 to the house mom and $10 to the DJ every shift.  (Currie Dep. 64:21–:24, Ex. A ("You pay at the beginning. You get your tips while you're working and then before you leave, you pay the house mom and you pay the DJ."); Noble Dep. 35:24–37:15, Ex. B (testifying to paying the house mom a "**flat fee of $10**" and a "**mandatory**" "**minimum**" of $10

to the DJ (emphasis added)); Pittman Dep. 74:8–:11 (testifying to being required to pay money to the house mom and the DJ); *accord* Smith Dep. 42:9–44:22, Ex. E (testifying that management required entertainers to pay a minimum of $10 to the house mom and $10 to the DJ per shift).)  This amount was not a percentage of their tips.  (*See* Indep. Contractor Rules PEG000055, ECF No. 132-31 ("**A DJ TIP . . . IS REQUESTED FROM ALL DANCERS**.").)

If entertainers could not physically pay these charges that day, then they had to pay the house mom and the DJ double on their next shift.  (Kelly Dep. 33:14–34:4, ECF No. 162 (testifying to a mandatory minimum of $10 to the house mom and DJ, and that if she failed to pay this at the end of the night, then she would "have to [pay] it the next shift"); Lopes Dep. 39:17–40:18, ECF No. 159 (testifying that a $10 payment to the DJ and to the house mom were mandatory and that, if an entertainer failed to pay, she "would just have to double up the next day"); Smith Dep. 42:9–44:22, Ex. E ("[W]e would have meetings, and there would be signs in the dressing room that says you have to pay $10 tip-out.  The house mom would cross your name off a list if you did not pay, then you would sometimes have to pay double the next time you worked.").)

**Club Charges are Not Pooled Tips**:  Magic City required entertainers pay Club Charges—these fines, fees, and tip outs—without regard to whether Plaintiffs

6

received tips.  As stated above, Plaintiffs paid fees and fines at the beginning of their shifts, before they had any opportunity to receive a single tip.  This money came out of Entertainers' pocket.  They could have used money out of a birthday card from grandma to pay the entry fee.  Magic City did not care.

The Club Charges entertainers paid were not connected to or tied to the tips they may or may not have received from customers.  Magic City did not even track or physically collect tips.  (Pretrial Fact Stip. ¶ 28, ECF No. 236.)  The club admittedly did not take a cut of Plaintiffs' tips.  As Defendant Brown, owner, testified, Magic City is "so different from any other club" because it does not "touch the percentage of [entertainers'] tips.  That's all theirs."  (Brown Dep. 91:21–92:6, ECF No. 132-1.)  He reiterated:   "I don't take a percentage of any of their tips that they make."  *id.* 137:7–:15.  The agreements Defendants drafted reflect Magic City's intention that it not collect entertainers tips: "Company and Participant agree that Company shall not have any right to any portion of Participant's Tips."  (Contract, ¶ 3, ECF No. 132-31.)

The fact that Club Charges have nothing to do with tip pooling is best illustrated when considering entertainers' obligations on slow nights.  There were shifts when Plaintiffs received no tips.  (*See* Auxtero Dep. 20:8–:18, ECF No. 157 (testifying to receiving zero or close to zero tips on some shifts); Currie Dep. 96:1–

:6, 120:10–:14, Ex. A ("[S]ometimes when you're paying to go to work, you don't make – you know, you may not make the money so it wouldn't be worth it, you know. . . . I've had nights where I walked in there and took less. I paid them a $100 to work and didn't make anything."); Davis Dep. 24:13–:17, ECF No. 156 (testifying to receiving zero tips some shifts);  Lopes Dep. 41:20–42:5, ECF No. 159 (testifying that the goal would be to earn enough in tips on slow nights to cover the mandatory charges, and working these slow nights simply to avoid having to pay the fine for failing to work the minimum shifts per week); Pace Dep. 28:14–:18, Ex. C (testifying that entertainers "might have some zero dollar Mondays.")

In those instances, Plaintiffs still had to pay Club Charges.  In other words, they left the club with less money than they arrived with.  (Howard Dep. 44:5–:11, ECF No. 155 ("[S]ometimes we will walk out of there with nothing. Sometimes you wouldn't even make your bar fee back, so. And then sometimes it will be a nice night, and you make over your bar fee and a little extra, you know. Some nights it was worth it, worth the effort, and sometimes it wasn't."); Journigan Dep. 81:17–:21, ECF No. 154 ("Q: . . . there's some entries on your calendar where it says horrible, or a horrible night, what did you walk out the door with on a horrible night? A: Zero dollars or a loss.").)

Club Charges were not the result of tip pooling.  They were simply the cost of working under Defendants' unlawful independent contractor scheme.  (*See* Hardin Dep. 47:21–:23, ECF No. 158 (testifying that she considers the monies she paid to the club in door fees and tip outs to be "expenses").)

## III) PLAINTIFFS DID NOT STIPULATE AWAY THEIR RIGHT TO RECOVER MINIMUM WAGES FREE AND CLEAR OF UNLAWFUL KICKBACKS.

In its Motion, Defendants disingenuously imply that Plaintiffs have given up their right to seek recoupment of kickbacks via stipulation.  Plaintiffs did no such thing.  While it is true that the parties have been in the process of stipulating to portions of Plaintiffs' damages since June, Plaintiffs did not at any time abandon any damage components.  The parties instead sought to agree on damages that could be discerned from Defendants' sign-in sheets.  (Bailey Decl. ¶¶ 2–4.)  This includes hours worked, *as well as* damages attributable to paid house fees.  (*Id.*)  Defendants' response to Plaintiffs' proposed trial plan this summer made clear that the contemplated stipulation would determine the quantification of house fees.  (Defs.' Tr. Plan Resp. 3, ECF No. 227.)  Defendants later abandoned discussions about stipulating to house fees quantification once they cooked up this new defense.  But, Plaintiffs never at any time relinquished their right to recover "kickbacks."  Defendants' insincere representations to the contrary are not

supported by the record and should be ignored.[2]

## <u>LEGAL STANDARD</u>

Motions in limine are properly utilized to eliminate collateral questioning, testimony, documents, and arguments that are not relevant to the issues to be adjudicated at trial. Courts only grant motions in limine to exclude evidence if the evidence in question is clearly inadmissible. *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009). "The moving party has the burden of proving that the evidence sought to be excluded is inadmissible. *Id*. Defendant has not met this burden.

As is clear from the face of Defendants' Motion, it is not really a motion in limine. Defendants make no arguments related to any Federal Rule of Evidence or the supposed inadmissibility of any facts. Defendants do not seek to exclude evidence. Rather, Defendants seek to substantively limit the measure of Plaintiffs' damages with a new legal theory almost one month before trial. Indeed, to consider the admissibility of the evidence at issue, the Court must rule on the proper measure of Plaintiffs' damages. Plaintiffs request the Court indeed rule on this issue so that this new dispute may be resolved before trial. Plaintiffs, however, also respectfully request that this last minute dispute not be permitted to delay the

---

[2] Tellingly, Defendants fail to support this claim with so much as a declaration from counsel.

presently scheduled trial.  This case is nearly three years old, and Plaintiffs look

forward to final resolution of these claims at the January 17, 2017, trial.

## <u>LEGAL ARGUMENT</u>

### I)  **PLAINTIFFS'  MINIMUM-WAGE  DAMAGES  INCLUDE  RECOVERY OF UNLAWFUL KICKBACKS.**

The FLSA requires employers to pay employees wages of at least $7.25 an

hour.  29 U.S.C. § 206(a).  The accompanying and longstanding regulations make

clear that wages must be paid "free and clear":

> "[W]ages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear."  **The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee**. This is true whether the "kick-back" is made in cash or in other than cash.

29 C.F.R. § 531.35 (emphasis added).

Courts across the country widely agree, holding that "employers generally

may not issue paychecks at the minimum wage rate and then require employees to

give some of the money back."  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892,

897 (9th Cir. 2013);[3] *see also Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d

---

[3] The regulations further outlined which deductions qualify as unlawful kickbacks.  Reasonable deductions for "board, lodging, or other facilities" are permissible because they primarily benefit the employee.  29 C.F.R. § 531.3(d)(1); *see also* § 531.32 (explaining "other facilities" must be "something like board or lodging").  The Eleventh Circuit has made clear that deductions are not

707, 730 (E.D. Mo. 2015) (holding costs that are essential for the employment relationship to come to fruition are for the benefit of the employer and qualify as unlawful kickbacks); *Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578 (W.D. Tex. 1999) ("Deductions for necessary equipment or supplies are illegal when such deductions deprive a worker of the federally mandated minimum wage or overtime pay."); *Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1077 (E.D. Tex. 2011) ("[A]n employer is prohibited from taking certain self-serving deductions from an employee's wages."). In other words, final wages that net below the minimum rate violate the FLSA's minimum-wage provision. To otherwise permit employers to pay wages with one hand and to charge employees to work with the other would gut the FLSA minimum-wage requirement entirely.

It is axiomatic that, if employers cannot require employees to pay kickbacks without violating the minimum-wage requirements, then employers cannot pay employees zero wages while also charging employees to work.[4] This unlawful

---

appropriate for "the cost of facilities which primarily benefit the employer." *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) (citing 29 C.F.R. § 531.36(b)). Defendants required Plaintiffs pay fines, fees, and tipouts for the privilege of working at the club and to subsidize the club's wage-payment obligations to DJs and house moms. These payments do not qualify as acceptable deductions for "board, lodging, or other facilities," and thus qualify as unlawful kickbacks that further deplete Plaintiffs' unpaid wages.

[4] The DOL and courts have held that kickbacks are still unlawful even when they come directly out of employees' pockets rather than deductions from wage checks. *Ketner v. Branch Banking & Trust Co.*, 143 F. Supp. 3d 370, 378–84 (M.D.N.C. 2015) (citing U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, at 1 (Mar. 10, 2006)).

kickback scheme is worse than subminimum; it creates a negative wage. Under this scenario, the employees are permitted to recover all unpaid wages and paid kickbacks so as to bring net wages up to the $7.25 an hour rate. Failure to include both components in the damages calculation would deprive employees of the full protections afforded under the FLSA and its accompanying regulations.

Plaintiffs' position on the components of minimum wage damages in exotic dancer litigation is not novel. For over twenty years, courts have held that FLSA minimum-wage damages include recovery of mandatory Club Charges. In 1995, the court in *Reich v. Priba Corp.*, plainly held that the "practice of collecting a tip-out fee . . . violates the FLSA because the deduction further reduces the entertainers' wages below the minimum wage." 890 F. Supp. 586, 595 (N.D. Tex. 1995) (citing *Reich v. Circle C. Invest., Inc.*, 998 F.2d 324, 330 (5th Cir. 1993)). The court ordered that the club return all tip-out fees collected, in addition to a straight calculation of unpaid wages, in order to "fully compensate the entertainers in the amounts required by the FLSA." *Id.*

In *Hart v. Rick's Cabaret Int'l, Inc.*, another entertainer case, the district court granted in part a motion for summary judgment on the quantity of FLSA minimum-wage damages, permitting plaintiffs to recover "the amount of minimum wages for each hour worked by a member of the FLSA collective, *as well as* the

values of these fines, fees, and 'tip outs' that these members paid to the club during the relevant shifts."[5]  60 F. Supp. 3d 447, 475–76 (S.D.N.Y. 2014).

In *McFeeley v. Jackson St. Entm't, LLC*, No. 8:12-cv-01019 (D. Md.), the Court permitted the following "Court's Instructions and Court's Charge to the Jury," ECF No. 82, explaining the components of a minimum wage damage:

> The Defendants were required to pay those minimum hourly rates free and clear of any deductions, charges, fees, fines, tip ins, tip outs, or kickbacks paid to Defendants by Plaintiffs.  If you find that any Plaintiff paid Defendants any money by way of deductions, charges, fees, fines, tip ins, tip outs, or kickbacks, you must include the amount in your award.  Tips or any other money a Plaintiff received from customers are not wages and are not to be considered.
> . . . .
> For each plaintiff, you will determine . . . the amount due, by multiplying the weeks worked by the hours worked each week and multiplying by the minimum wage of $7.25 for regular hours and $10.88 for any hours in excess of 40 per week.  You will then add the weekly amount each paid to the defendants to reach a total amount due.

(Ex. G at 8.)  The defendant appealed following trial, challenging in part the appropriateness of the instructions and verdict forms used.  The Fourth Circuit affirmed.  825 F.3d 235, 246 (4th Cir. 2016).

Just this year, this District ruled that Club Charges are recoverable under the FLSA as part of the minimum-wage calculation in *Henderson v. 1400 Northside*

---

[5] The court stopped short of adopting actual calculations related to tip outs specifically because a fact question existed as to which tip outs (*e.g.* to the DJs or the house mom), were required and therefore recoverable.

*Drive, Inc.*, No. 1:13-CV-3767-TWT, 2016 WL 3125012, at *4 (N.D. Ga. June 3, 2016). This Court granted plaintiffs' motion asserting that the "[d]efendants owe [p]laintiffs $7.25 per hour for each hour worked, 29 U.S.C. § 206(a), plus reimbursement of all fines, fees, and 'tip outs' [p]laintiffs paid to the club as a condition of employment." *Id.* That this proposition came before the Court uncontested, in an otherwise hotly contested case, speaks volumes about the state of the law on this subject.

It is plainly logical and well recognized across the country that exotic dancers, who paid mandatory Club Charges as a condition of employment, are entitled to recover $7.25 for each hour worked plus reimbursement of those charges paid to the club as a condition of employment. Notably, Defendants here did not contest this calculation until two months ago. In fact, Defendants own expert calculated damages by adding up the house fees Plaintiffs paid the club as recorded on Defendants' sign-in sheets. (Exc. Gould Exp. Rpt. ¶¶ 48, 51, Ex. F ("correcting" Plaintiffs' damage calculation as to house fees).) Defendants are only now attempting to distort this clear reality with new and distinguishable arguments. The Court should reject these efforts and permit Plaintiffs to proceed to trial as scheduled and permit the jury to determine the amount of Club Charges the collective shall recover as part of their minimum-wage claims.

## II)   PLAINTIFFS ASSERT CLAIMS FOR UNPAID MINIMUM WAGES AND OVERTIME PAY.

Ignoring the above, Defendants attempt to reduce Plaintiffs' recoverable back pay by re-characterizing the nature of this case completely.  Defendants deem this to now be a tip-pooling case.  The record is clear, however.  Plaintiffs are not seeking to recover pooled or confiscated tips.  This case is wholly distinguishable from the line of cases upon which Defendants' rely.  The Court should reject Defendants' revisionist history.

### A)   **Plaintiffs Do Not Seek to Recover Pooled Tips.**

Section 203(m) of the FLSA allows employers to pay qualifying tipped employees wages at a reduced rate in limited and prescribed circumstances.[6]  This reduced rate is known as a "tip credit."  When employers take a tip credit (and pay a reduced wage), "all tips received by such employee [must be] retained by the employee."  29 U.S.C. § 203(m).  Conversely, Defendants' cited cases argue that employers can retain and pool tips when the employer instead pays the full $7.25 an hour.  In amending the FLSA, "Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips they receive, or forgo the tip credit and pay them the full hourly **minimum wage**."  *Chung v. New Silver*

---

[6] Defendants here cannot qualify for the tip credit because Defendants do not meet the requirements set forth in section 203(m) and because, importantly, Defendants did not pay even the requisite reduced wage.

*Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) (emphasis in original).

Defendants here neither paid a tip credit nor paid a full wage. Defendants did not pool or retain any of Plaintiffs' tips. Thus, it is difficult to understand how this tip-pooling analysis has anything to do with this case.

First, it is undisputed that Defendants did not pay Plaintiffs wages. In contrast, the plaintiff in *Malivuk* worked for the defendant for $7.25 per hour as a valet driver and received tips from customers. *Malivuk*, 2016 WL 3999878, at *1. The defendant pooled the plaintiff and her co-valets' tips and distributed them among the group, including some to defendant itself. *Id*. Nothing on the record suggests that the valet driver had to pay prescribed fees to work irrespective of whether she earned tips. The complaint did not even allege that the valet driver was paid less than the minimum wage because the plaintiffs were paid the $7.25 free and clear. *Id*. at *3. The valet driver instead brought claims simply to recover the tips pooled by defendants.[7] *Id*.

---

[7] Likewise, *Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442 (4th Cir. 2015) and *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010), also involve employees, who were paid their minimum wage free and clear and who sought to recover pooled tips. Defendants other cited cases are inapposite for the same reasons. *Brueningsen v. Resort Express Inc.*, 2015 WL 339671, at *2 (D. Utah Jan. 26, 2015) (holding that employers, who do not utilize the tip credit but do pay minimum wages, may take employees' tips); *accord Aguila v. Corp. Caterers II, Inc.*, 2016 WL 4196656 (S.D. Fla. Aug. 9, 2016); *Stephenson v. All Resort Coach, Inc.*, 2013 WL 4519781, at *1 (D. Utah Aug. 26, 2013). Even more distinguishable, *Meller v. Wings Over Spartanburg,*

*Malivuk* held that the FLSA does not provide a separate cause of action to recover tips when the employees already receive wages at the full, minimum rate. Quoting *Brueningsen*, the Court explained that "[c]ourts have held that § 203(m) only prohibits an employer from retaining a portion or all of the tips if the employer pays a tipped employee less than the federal minimum wage . . . ." *Id.* at *3. Because these Plaintiffs were paid $0.00 an hour as opposed to $7.25, the analysis in *Malivuk* is wholly inapplicable. *Malivuk* does not say what Defendants hoped it would: that an employer has free reign over the tips of an employee of whom it fails to pay with minimum wages.[8] Such a ruling would contravene the spirit of the FLSA.

Second and importantly, Plaintiffs here (unlike the plaintiffs in Defendants' cases) do not seek to recover pooled tips. Defendants never tracked Plaintiffs' tips or took a cut of the same. Plaintiffs therefore are not seeking to take back tips. Plaintiffs instead seek to recover paid Club Charges. It is undisputed that Defendants required Plaintiffs to pay Club Charges as a condition of their employment. **<u>Defendants required these payments regardless of whether or</u>**

---

*LLC*, 2016 WL 1089382 (D.S.C. Mar. 21, 2016), involved dismissal of state law claims, wherein the court noted in dicta that the FLSA only permits recovery of minimum wages and overtime.

[8] Defendants advocate for the Court to find that section 203(m) creates a Goldilocks scenario that denies an employee of the right keep her tips if she makes too many wages ($7.25), and if she receives too few wages ($0.00), but it permits the employee to retain her tips if she receives the "just right" amount of wages ($2.13).

**not Plaintiffs received tips during their shift**.   The evidence is clear.   For example, Plaintiffs paid house fees before they even set foot on the floor.   Pending fines (e.g., for failing to work the minimum shift requirement), likewise had to be paid up front in order for Plaintiffs to be permitted to work a shift.   Plaintiffs had to pay the house mom and the DJ a flat charge, regardless of whether Plaintiffs made enough in tips to cover the Club Charges.

The distinction is crucial.   These Club Charges were mandatory, pre-determined amounts that bore no relation to the tips (if any) Plaintiffs received. Plaintiffs therefore seek to recover unlawful charges they paid to work, not to recover pooled tips.   Plaintiffs are permitted to recover these charges in order to bring their recovery up to a free and clear minimum wage.   Because of this, *Malivuk* is again inapposite.

Likewise, the three recent exotic dancer cases Defendants cite from outside this circuit are factually distinguishable for the same reason.[9]   The deductions the clubs made in these cases came from the dancers' tips.   For example, in *Hughes*, the club required each entertainer to pay, among other fees, 15% of her total

---

[9] *See Hughes v. Scarlett's G.P., Inc.*, 2016 WL 454348 (N.D. Ill. Feb. 5, 2016); *Labriola v. Clinton Entm't Mgmt., LLC*, 2016 WL 1106862 (N.D. Ill. Mar. 22, 2016); *Levi Chicoine v. Gulliver's Tavern Inc.*, 2016 WL 552469, (D.R.I. Feb. 10, 2016).

earnings as well as $5 for each dance she performed in the "Cabana room."[10] *Hughes*, 2016 WL 454348, at *2.  The logical conclusion of this fee structure is that if the dancer did not receive any tips, she did not pay these fees.  This is not the fee structure here.  Plaintiffs were required to pay the Club Charges no matter what, if any, tips they received during a shift.  This key factual distinction differentiates *Hughes*, a tip-pooling case where the fees charged to dancers varied based on the dancers' tips and dancers sought to recover these tips, from the instant matter, which is a minimum-wage "kickback" case.[11]

The Court should reject Defendants' efforts to contrast apples with oranges and deny Defendants' motion on these grounds alone.

B)   **The Tip Pooling Cases Cited by Defendants Are Contrary to the Spirit and Intent of the FLSA.**

Even if this were a tip-pooling case (and it is not), *Malivuk* only represents one side of a split in authority.  In 2011, the Department of Labor ("DOL") revised the FLSA regulations to make clear that:

---

[10] *Labriola* and *Levi Chicoine* also held that the clubs collected fees from dancer tips.  Again, this leads to the conclusion that if the dancer collected no tips, the clubs collected no fees.  This categorizes *Labriola* and *Levi Chicoine* as "tip-pooling" cases and distinguishes them from the instant matter.

[11] In addition to being factually distinguishable, the plaintiffs in *Hughes*, *Labriola*, and *Levi* did not seek to recover unlawful kickbacks as part and parcel of their minimum-wage claims.  They framed the issue in their pleading instead as a standalone cause of action to recover pooled tips.  Given this, the court in *Hughes* held that no authority exists to sustain "a standalone private cause of action for an alleged tip sharing violation under the FLSA, untethered to an alleged minimum wage or maximum hour violation."  *Hughes*, 2016 WL 454348, at *6.

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. **The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m)**: As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool. Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

29 C.F.R. § 531.52 (emphasis added).  In other words, employers cannot pocket employees' tips and still be in compliance with the minimum-wage requirements. The Ninth Circuit recently adopted this regulation, ruling that "tips belong to the tipped employee" absent a valid tip pool, even when those employees are paid $7.25 an hour.  *Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1095 (9th Cir. 2016).  This line of reasoning is more persuasive than *Malivuk* and more consistent with the FLSA's history and intent.

Shortly after the enactment of the FLSA, the U.S. Supreme Court found that, absent an agreement to the contrary, tips belong to the employee.  *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 388 (1942).  Later, Congress amended the FLSA to add section 203(m) and create the tip credit provision, which provided restaurant owners with relief form the minimum-wage obligations under narrow and prescribed circumstances, (i.e., when employer provides employee with notice,

21

when employees retain their tips absent a valid tip pool, when employers pays at least $2.13 an hour, and when employers pay additional monies in wages to make up the difference when tips do not bring the employee up to $7.25). *See Oregon Rest.*, 816 F.3d at 1083–84 (citing the federal register). The purpose behind this amendment makes clear that the default rule of the FLSA is that employers must pay tipped employees full wages and cannot take employees' tips.

*Malvick*'s contrary over simplification of the issue threatens the integrity of the FLSA. As the DOL recently expressed:

> If . . . the FLSA places limitations on an employer's use of its employees' tips only in the context of a tip credit, an employer could simply eschew the tip credit and use a greater part of its employees' tips toward its minimum wage obligations than permitted under [§ 203(m) ] . . . . If an employer could avail itself of this loophole, it would have no reason to ever elect the tip credit because, instead of using only a portion of its employees' tips to fulfill its minimum wage obligation, it could use all of its employees' tips to fulfill its entire minimum wage obligation to the tipped employees or other employees.

DOL, Amicus Curiae Brief in *Jahir v. Rynman Hosp. Industrs., Inc.*, No. 14-1485, (4th Cir. Jan. 2015), (Ex. H). Employers should not be found to be in FLSA compliance while they are pocketing employees' tips.

More importantly, however, nothing in this body of case law informs a scenario like this one, where Defendants are not pooling tips but instead are charging Plaintiffs to work. The Court need not pick a side in this tip-pooling fight

in order to find that the proper extent of Plaintiffs' minimum-wage damages includes recoupment of mandatory charges paid to work.

## **CONCLUSION**

For years, Defendants lived in a fictitious world of their own creation: treating Plaintiffs as independent contractors. Defendants benefited from this unlawful arrangement by avoiding payroll tax, workers' compensation and other ordinary employee expenses. Defendants also pocketed hundreds of thousands of dollars by charging their employees to work. Defendants did this while also shifting business risk to their employees, who pay to take off their clothes regardless of how much, or how little, they received from customers in tips each shift.

Defendants' willful misclassification colored every decision Defendants made regarding Plaintiffs—including the decision to impose Club Charges—and the consequences of those decisions land squarely on Defendants. To an independent contractor, these charges may be part of a valid, arms-length compensation agreement. To an employee, however, these charges are nothing but unlawful "kickbacks," which must be reimbursed for Plaintiffs to fully recover their minimum wages "free and clear" as required by law.

Ignoring these common sense and longstanding principles, Defendants

instead attempt to equate this case to a tip-pooling action. Defendants though have already attempted to offset their minimum-wage payment obligations once by pointing to Plaintiffs tips.[12] Defendants lost this argument, with the Court ruling that the tips are not "wages" and are the sole property of Plaintiffs. Employers have to pay their employees. The Court should likewise reject Defendants' new attempt to use Plaintiffs' "tips" to defray its obligation to pay a free and clear minimum wage. Accordingly, and for the reasons discussed above, Defendants' Motion in Limine must be denied.

Respectfully submitted,

DATE: December 7, 2016                    NICHOLS KASTER, PLLP

/s/ Rebekah L. Bailey
Michele R. Fisher, GA Bar No. 76198
Paul J. Lukas, MN Bar No. 22084X*
Anna Prakash, MN Bar No. 0351362*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
fisher@nka.com
aprakash@nka.com
bailey@nka.com

---

[12] This Court previously adopted the weight of authority and held that Magic City cannot use gratuities provided to entertainers from customers to offset the club's minimum-wage payment obligations. (Summ. J. Order 28, ECF No. 190.) The club has to actually pay its employees. Thus, the tips Plaintiffs received from customers are no longer relevant to this action and have nothing to do with Plaintiffs damages moving forward.

*admitted pro hac vice

**MAYS & KERR, LLC**
John Mays, GA Bar No. 986574
Meredith Carter, GA Bar No. 325422
235 Peachtree St. NE #202
Atlanta, GA  30303
Telephone: (404) 410-7998
Fax: (404) 855-4066
john@maysandkerr.com
meredith@maysandkerr.com

**ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CERTIFICATE OF SERVICE

*Vaughan et al, vs. Paradise Entertainment Group Inc. d/b/a Magic City et al.*
Court File No.: 1:14-cv-00914-SCJ

I hereby certify that on December 7, 2016, I caused the following documents to be served:

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
PLAINTIFFS' FINES, DOOR FEES, AND TIP-OUTS**

I caused the above-listed document(s) to be served by electronic mail with consent to the following persons at the following address(es):

Gary Freed
F. Beau Howard
Freed Howard LLP
Centennial Tower, Suite 3600
101 Marietta St. NW
Atlanta, GA 30303
gary@freedhoward.com
beau@freedhoward.com

Dated:  December 7, 2016                    /s/ Rebekah L. Bailey
                                            Rebekah L. Bailey

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated: December 7, 2016                NICHOLS KASTER, PLLP

                                                             /s/ Rebekah L. Bailey____