# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

---

KEIRA VAUGHAN, JACQUELINE WOODARD, SASHE OMOGIATE, and MAKEDA ROOTS, individually and on behalf of all other similarly situated individuals,

      Plaintiffs,

v.

PARADISE ENTERTAINMENT GROUP, INC. d/b/a MAGIC CITY, -M- ENTERTAINMENT & CONSULTANT SERVICE, INC., MARVIN L. BROWN, individually, and MICHAEL BARNEY, SR., individually,

      Defendants.

Case No.: **1:14-cv-00914-SCJ**

---

## MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF ACTION

---

### INTRODUCTION

Together Plaintiffs Keira Vaughan, Jacqueline Woodard, and Makeda Roots, individually and on behalf of the collective action ("Plaintiffs"), and Paradise Entertainment Group, Inc., -M- Entertainment & Consultant Service, Inc., Marvin L. Brown, and Michael Barney, Sr. ("Defendants") (collectively "the parties"),

reached a proposed settlement of Plaintiffs' minimum wage and overtime claims arising under the Fair Labor Standards Act ("FLSA").  (*See* Ex. 1.)  The parties reached this settlement with the Court's assistance days before trial and after several years of zealous litigation.  Although Defendants deny liability, the agreement provides a fair, adequate, and reasonable resolution of the parties' *bona fide* dispute.  The parties have informed all Plaintiffs of the terms of the settlement and each one of the twenty-eight (28) Plaintiffs have agreed to participate and release their claims in exchange for the offered consideration.  (*See* Ex. 2.) Plaintiffs now bring this consent Motion for Court approval of the agreement and dismissal this case.

## **RELEVANT BACKGROUND**

### I)      **SUMMARY OF LITIGATION**

Plaintiffs Keira Vaugh, Jacqueline Woodard, Sashe Omogiate initiated this FLSA collective action on March 28, 2014, and Makeda Roots joined as a Named Plaintiff on April 8, 2014.  (*See* Pls.' Compl., ECF No. 1; Pls.' Am. Compl.,  ECF No. 6.)  Plaintiffs substituted Paradise Entertainment Group, Inc. as the named Defendant on May 2, 2014, and added the remaining Defendants to the case on February 27, 2015.[1]  (*See* Pls.' 2d Am. Compl., ECF No. 8; Pls.' 3d Am. Compl.,

---

[1] Plaintiffs originally filed against M-Entertainment Properties, LLC, and later added that entity back as a defendant in the Third Amended Complaint.  The Court subsequently ruled that M-Entertainment Properties, LLC did not legally qualify as

ECF No. 72.)

Plaintiffs assert claims for unpaid minimum wages and overtime pay under the FLSA on behalf of themselves and a similarly situated collective. (*See generally* Pls.' 3d Am. Compl., ECF No. 72.) Plaintiffs worked for Defendants as entertainers (also referred to as "exotic dancers" or "strippers"). Defendants considered Plaintiffs to be "independent contractors," rather than employees, and thus, Plaintiffs allege, Defendants did not pay them minimum wages, free and clear of unlawful kickbacks. (*Id.* ¶¶ 38–48.)

Defendants answered, denying any violations of the FLSA, and Defendants counterclaimed with breach of contract and unjust enrichment causes of action. (*See* Def.'s Ans., ECF No. 15; Def.'s Am. Ans. & Counter., ECF No. 55; Defs.' Consol. Ans., ECF No. 76.) Defendants responded in part that Plaintiffs worked as independent contractors and therefore not protected by the FLSA, and in the alternative, that Defendants' wage payment obligations should be offset by Plaintiffs' receipt of money from customers. (Def.'s Counter. ¶¶ 22, 38 & 4th, 21st Affirm. Defenses; ECF No. 55; Defs.' Consol. Ans. ¶ 26, ECF No. 76.) Defendants also alleged that Plaintiffs' cause of action does not contemplate recovery of tips that were confiscated from Plaintiffs in the form of fees, fines, and tipouts because Defendants did not take a tip credit against minimum wage. (*See*

---

an employer under the FLSA, and therefore this entity is not a party to the settlement.

Defs.' Mot. in Limine 5, ECF No. 240.)

The parties stipulated to conditional collective-action certification, and twenty-eight (28) Plaintiffs in total consented to be party to this Action and remained in this Action through its resolution.[2] (*See* ECF Nos. 3, 9, 11, 20, 23, 24, 26, 28, 30–35, 37–43, 45, 57, 64.)   Both parties served written discovery.   Each Defendant responded to 16 to 36 requests for the production of documents, one (1) request for admissions, 16 to 24 interrogatories, and collectively produced a total of 3,305 pages of documents.   (Bailey Decl. ¶¶ 3–5.)[3]   Plaintiffs responded to 5 to 16 interrogatories, to 5 to 38 requests for admission, 3 to 28 requests for the production of documents, and collectively produced a total of 2,792 pages of documents.   (*Id.*; *See* Prot. Order, ECF No. 191.)   Plaintiffs deposed each of the Defendants, as well as seven (7) additional witnesses, and Defendants deposed seventeen (17) Plaintiffs.   (Bailey Decl. ¶ 5.)

---

[2] This count (28) includes the four named Plaintiffs.  A total of 43 people have joined this case.  Ten withdrew, many as a response to discovery obligations.  The Court granted Defendants' motion to dismiss Plaintiff Brianna Taylor, after she became unresponsive to Plaintiffs' counsel and failed to meet her discovery obligations.  (Taylor Order, ECF No. 286.)  Defendants individually settled the claims of four more Plaintiffs in December 2016, (ECF No. 251), leaving the twenty-eight who are party to the relevant Settlement.

[3] Defendants consent to this Motion to the extent Defendants believe the relief requested should be granted. There are factual issues and matters of perspective on which the parties would differ on the facts and circumstances in this case. Accordingly, by consenting to the filing of this Motion, Defendants do not intend to create judicial admissions based on the facts alleged herein, particularly those which were disputed by Defendants leading up to settlement.

The parties engaged in extensive motion practice.  For example, Plaintiffs moved for a protective order, requesting the Court permit representative discovery and limit financial and tax related discovery.  (*See generally* Pls.' Mot. for Prot. Order, ECF No. 65.)  Defendants filed multiple motions for sanctions, in part requesting the Court dismiss Plaintiffs who did not appear for depositions or produce financial or tax related documents.  (*See generally* Defs.' Mot. for Sanctions I, ECF No. 97; Defs.' Mot. for Sanctions II, ECF No. 123.)  The parties also filed cross motions for summary judgment.  (Pls.' Summ. J. Mot., ECF No. 131; Defs.' Summ. J. Mot., ECF No. 136.)

On March 15, 2016, the Court granted Plaintiffs' motion for partial summary judgment in part and denied the Defendants' motion for summary judgment. (Summ. J. Order, ECF No. 190.)  The Court held that Plaintiffs qualified as employees and denied Defendants' counterclaims.  (*Id.* at 31–42.)  The Court found that all but Defendant –M-Entertainment Properties, Inc. qualified as employers.  (*Id.* at 43–46.)  The Court set trial for January 17, 2017, to resolve the remaining issues of willfulness, damages, and Defendants' good faith defense to liquidated damages.

The parties prepared for trial, filing proposed pretrial orders and collectively nine (9) motions in limine, as well as other related motions.  (*See, e.g.*, ECF Nos. 252, 255, 260–66, 281–83.)   Defendants moved for reconsideration and

interlocutory appeal on the Court's determination on a motion in limine pertaining to the measure of damages, (ECF No. 266.)  The parties attended the final pretrial conference on January 10, 2017, and met in chambers with the Court the same day and the following day to discuss the possibility of settlement.  Through an arm's length negotiation, and with the Court's assistance, the parties settled on all material terms.  (Bailey Decl. ¶ 6.)

## II)    CALCULATION OF DAMAGES

Defendants did not maintain complete records of Plaintiffs' dates of employment, days or hours worked, and/or the fines, fees, and tip-outs Plaintiffs paid to work because Defendants considered Plaintiffs to be independent contractors, not employees, and thus did not believe Defendants were required to maintain such records.  Defendants, however, did retain most of the night-shift sign-in sheets used to document which dancers worked which shifts, the time the dancers arrived, and the amount the dancers each paid in house fees.  (*See* Pls.' Trial Plan Mem. 7–9, ECF No. 217-1.)  Further, Plaintiffs obtained, through Public Records Act requests, the dates each Plaintiff received and renewed her license with the Atlanta Police Department.  (*See* Pls.' Ex. 60, Attach. G-1 to Am. Pretrial Order 99, ECF No. 259.)

Throughout litigation, Plaintiffs have calculated damages using a combination of Defendants' partial records and Plaintiffs own good-faith estimates

of time worked and fees paid.  Plaintiffs produced these calculations to Defendants as supplements to their initial disclosures.[4]  (*See* Pls.' Resp. to Wise Mot. in Limine 1–3, ECF No. 296.)  Defendants rebutted these calculations and produced their own calculations through their expert report.  (*See* Gould Rep't, ECF No. 244-7.)  In preparation for trial, Plaintiffs created a summary exhibit, representing the damages that could be discerned from Defendants' partial records.  (Pls.' Resp. to Wise Mot. in Limine 4, ECF No. 296.)  Plaintiffs were also prepared to testify about their recollection of work for the shifts and time periods with missing sign-in sheets, and for fines and tipouts paid, since no documentation exists as to these amounts.  (*Id.* at 3.)  The appropriate method of presenting damages evidence was a contested issue leading up to trial.  (*See, e.g.*, *id.*)

The month before trial was scheduled to begin, the parties stipulated to the amount attributed to the portion of each and every Plaintiffs' damages related to hours worked ($7.25 per hour worked), using a compromise of the parties' damages methods.[5]  The parties agreed on amounts for each Plaintiff attributed to the two-year statutory of limitations period, as well as an amount per person for the

---

[4] Plaintiff Kristin Journigan kept her own contemporaneous work records, and so Plaintiffs' counsel relied on those more complete documents to calculate her damages.  (Pl.' Resp. to Wise Mot. in Limine 4 n5, ECF No. 296.)

[5] The parties stipulated to damages using good-faith estimates for Plaintiffs Danielle Gordon and Angela Glass because their identified stage names do not appear in the existing records.  (Bailey Decl. ¶ 11.)  The house fee and tipout damages for these plaintiffs were similarly calculated for settlement purposes.  (*Id.*)

three-year statute of limitations period (applicable upon a finding of willfulness). (*See* Stip. Facts ¶¶ 1–2, Attach. E to Am. Pretrial Order, ECF No. 259.)   The parties did not stipulate to the amount of damages (if any) attributable to fines, fees, and tipouts paid.

For the purpose of settlement, Plaintiffs relied on the parties' stipulation of hourly wage damages, and for the remaining damage components, Plaintiffs calculated the following:

A)   Dates of Employment:  Plaintiffs' counsel identified dates Plaintiffs worked first by identifying Plaintiffs' stage names on the sign-sheet data itself.  Plaintiffs further limited dates worked to account for the recycling of stage names using Plaintiffs' licensure dates according to the Atlanta Police Departments and Plaintiffs' discovery responses regarding the same.

B)   Damages Period(s):  Plaintiffs' counsel calculated the applicable two-year and three-year statute of limitations periods for each Plaintiff using the date she filed her consent form with the Court and joined the case, and counted back two and three years.  All Plaintiffs ceased working with Defendants during the course of litigation, ending their damages periods.

C)   Shifts Worked:   Plaintiffs' counsel counted the number of shifts Plaintiffs each worked by identifying their stage names in the sign-in sheet data during each damage periods.  Doubles counted as two shifts worked.  Plaintiffs calculated an extrapolation of shifts worked for the time period with missing day-shift sign-in sheet data, using a per person average when possible.

D)   House Fees:  Plaintiffs' counsel added up all the house fees each Plaintiff paid for Shifts Worked during the Damages Periods as documented on the sign-in sheets.   Plaintiffs calculated an extrapolation of house fees paid during the time period with missing day-shift sign-in sheets using an average day-shift house fee paid.

E)  <u>Tip Outs</u>:  For each Plaintiff, Plaintiffs' counsel multiplied the Shifts Worked during the Damages Periods by $20.00 as Plaintiffs were preparing to testify that they were required to tipped out the DJ $10.00 and the House mom $10.00.

F)  <u>Fines:</u> Plaintiffs' counsel added up the total fines each Plaintiff identified she incurred during the Damages Period(s) in her discovery responses and/or as provided in the calculation of these damages accompanying Plaintiffs' supplemental initial disclosures.

(Bailey Decl. ¶ 10.)   The above calculation provides a total damages of $377,686.74 during the two-year time period and $563,205.62 in damages during the three-year time period.  (*Id.* ¶ 12.)  These amounts could up to double if the Court were to award liquidated damages.  (Pls.' Tr. Br., Attach. H-1, Am. Pretrial Order 161–62, ECF No. 259.)  Further, Plaintiffs had incurred and were prepared to petition for more than $1,200,000 in attorneys' fees and $60,000 in litigation expenses as the prevailing party.  (Bailey Decl. ¶ 17.)  Defendants were prepared to significantly contest these amounts and Plaintiffs' entitlement to a fee award.

Plaintiffs negotiated settlement with these numbers in mind.  (*Id.* ¶ 18.) Settlement allocations defined *infra* are premised on this calculation of damages.

## III)  THE SETTLEMENT TERMS

On March 8, 2017, the parties executed the written settlement agreement attached hereto as Exhibit 1.  This agreement contains the following pertinent settlement terms:

### A)  **The Settlement Amount**

The parties agreed to settle this action for a maximum settlement amount of

$1,100,000.00, exclusive of employer-side payroll taxes and any payroll administration expenses Defendants may incur (if any). (Agreement ¶¶1.16, 2.1, Ex. 1.) The settlement apportioned one-third ($366,666.67) of this amount to attorneys' fees, $60,559.83 to reimburse for litigation costs, and $1,000 to cover settlement administration costs. (*Id.* ¶¶ 1.3, 1.8, 1.36, 2.3.) The agreement allocated another $8,500.00 in service awards for the four Named Plaintiffs ($1,000 each) and the 11 additional deposed Plaintiffs ($500 each). (*Id.* ¶¶ 1.12, 1.18, 1.34, 2.3.) The remaining $663,273.50 is to be allocated among the 28 Plaintiffs on a *pro rata* basis according to the above damage calculation for the three-year statute of limitations period.[6] (*Id.* ¶¶ 1.14, 1.19, 1.28–1.29, 2.3, 2.5; *see also* Calc., Ex. 3.) The settlement allocation contemplates the settlement of liquidated damages because it apportions one-half of the *pro-rata* amount to "other income" on a Form 1099. (Agreement ¶¶ 1.15, 5.3, Ex. 1.)

B)   **Notice of Settlement**

The Settlement Agreement provided each Plaintiff would receive notice of the settlement and would have forty-five (45) days to review the terms and to decide whether to accept or reject the agreement. (*Id.* ¶ 3.1–3.4.)

---

[6] The agreement also contained detailed terms on how funds would be handled related to non-responding or rejecting plaintiffs. These terms are inapplicable to this motion since all Plaintiffs accepted the settlement.

C)    **Settlement Distribution**

The Agreement contemplates distribution of the settlement awards over a thirty month period in ten (10) equal installments on a quarterly basis. (*Id.* ¶¶ 1.38, 5.5.) The Agreement includes a signed confession of judgment Plaintiffs may file with the Court if Defendants are somehow unable to timely complete these payments. (*Id.* ¶ 6.1–6.6.) Each Settling Plaintiff will have 180 days to cash each check, and any uncashed portions will be donated to the Atlanta Dream Center, Inc., which runs the Out of Darkness program for women. (*Id.* ¶ 5.11.) The focus of this section 502(c) tax-exempt organization is to rescue and restore victims of "commercial sexual exploitation," in part through the operation of a support hotline. *See* https://outofdarkness.org/.

D)    **Release of Claims**

In consideration for the settlement payment from Defendants, Plaintiffs agree to release "Defendants, their respective affiliates and related entities, and all of their incumbent and former officers, managers, directors, owners, members, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, privies and representatives, in their individual and/or representative capacities," from

> all claims, liabilities, demands, obligations, damages, actions, or
> causes of action that were or could have been asserted in the Action
> under state or federal wage and hour laws for unpaid minimum wages,
> overtime premiums, kickbacks, reimbursements, liquidated damages,

costs, attorneys' fees and all other forms of legal or equitable relief available related to claims and transactions alleged in the Third Amended Complaint that accrued during the Relevant Period.

(Agreement ¶¶ 1.31–1.32, Ex. 1.)  The release covers the "period beginning three years from the date each Plaintiff filed their Consent to Join Form until the date of the execution of the Agreement."  (*Id.* ¶ 1.33.)

## IV)   PLAINTIFFS' ACCEPTANCE OF THE AGREEMENT

On March 10, 2017, in accordance with the terms of the Settlement Agreement, Plaintiffs' Counsel distributed the Notice of Settlement and Release of Claims Form to all Plaintiffs.  (*Id.* ¶ 3.1; *see* Ex. A to Agreement, Ex. 1.)  The Notice of Settlement informed each Plaintiff of the terms of the settlement, including each Plaintiff's individual settlement offer.  (*See* Ex. A to Agreement, Ex. 1.)  The Notice also described the various factors considered in determining individual allocations.  (*Id.*)  The Notice of Settlement explained the release of claims made in exchange for the settlement, as well as the payment process, and provided Plaintiffs with the opportunity to request the full Settlement Agreement for further review.  (*Id.*)  All Plaintiffs returned their executed release form. (Bailey Decl. ¶ 9; *see* Releases, Ex. 2.)

Pursuant to the terms of the Agreement, Plaintiffs now move for settlement approval and dismissal of this action.

## ARGUMENT

**I)   THE SETTLEMENT IS THE RESULT OF A *BONA FIDE* DISPUTE AND IS FAIR AND REASONABLE.**

Employees cannot bargain, waive, release, or modify their rights under the FLSA except under narrow circumstances.   *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).   Section 216(c) provides the first method, which is through a settlement supervised by the U.S. Secretary of Labor. The second method occurs in the context of a private lawsuit, and it requires court approval of the settlement.   *Id.* at 1353.   Under the second scenario, a court must find that the agreed-upon settlement represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" in order to validate a release.   *Id.* at 1355.

This standard is lower than the standard for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *DeWitt v. Darlington Cnty.*, 2013 WL 6408371, at *3 (D.S.C. Dec. 6, 2013).[7]   Instead, judicial review of an FLSA settlement "is required because the FLSA was meant to protect employees from substandard wages and oppressive working hours, and to prohibit the contracting away of their rights."   *Nichols v. Dollar Tree Stores, Inc.*,

---

[7] Unlike Federal Rule of Civil Procedure 23(e), the FLSA does not require preliminary approval. *See Jones v. Agilysys, Inc.*, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013).

No. 1:13-CV-88 WLS, 2013 WL 5933991, at *2 (M.D. Ga. Nov. 1, 2013); *see also Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652, at *6 (D. Ariz. Dec. 2, 2013) (stating the court's "[o]bligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes").

The court must "ensure that [a settlement agreement] is not the result of the employer using its superior bargaining position to take advantage of the employee." *Rakip v. Paradise Awnings Corp.*, 514 F. App'x 917, 919–20 (11th Cir. 2013) (citing *Lynn's Food Stores, Inc.* 679 F.2d 1350 at 1354); *see also Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008). Accordingly, "[w]hen the employee is represented by counsel in an adversarial context, there is some assurance that 'the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Barnes v. Ferrell Elec., Inc.*, No. CV 113-056, 2013 WL 5651903, at *1 (S.D. Ga. Oct. 16, 2013) (citing *Lynn's Food Stores, Inc.* 679 F.2d 1350 at 1354). There is a strong presumption in favor of finding a settlement fair. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources.").

Under this standard, the parties' Settlement represents a fair and reasonable

resolution of a *bona fide* FLSA dispute free of collusion or fraud.

A)   **The Settlement Resolves a *Bona Fide* Dispute.**

Courts must first confirm that a *bona fide* dispute indeed exists to "ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *See Collins*, 568 F. Supp. 2d at 719.  In other words, the Court must ensure that the settlement represents an arm's length agreement, and that the workers are not somehow being coerced or tricked into forfeiting their rights to wages.  *Walker v. Vital Recovery Servs., Inc.*, 300 F.R.D. 599, 601 (N.D. Ga. 2014) (citing *Lynn's Food,* 679 F.2d at 1354).  Courts may presume an absence of fraud and collusion if this is no evidence to the contrary. *Id.* at 725 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

In this case, the parties indeed litigated *bona fide* disputes.  Plaintiffs alleged that Defendants misclassified them as exempt from the FLSA and failed to pay them minimum wages.  Defendants insisted that they properly classified Plaintiffs, and alternatively sought to reduce or eliminate Plaintiffs' damages with their offset affirmative defense and/or counterclaims.  The parties filed cross motions for summary judgment.  The issues in this case were hard fought by true adversaries.

At the time of settlement, the parties were preparing to try their remaining disputes, all relating to damages:  the amount of damages, whether Defendants'

actions were willful, and whether Defendants acted in good faith and therefore may evade an award of liquidated damages.  (*See* Am. Pretrial Order. 10, 15, ECF No. 259.)  Defendants have even indicated their intent to appeal following trial, at a minimum as to the components of damages Plaintiffs are entitled to recover under the FLSA.  (*See generally* Defs.' Mot. for Reconsideration, ECF No. 266.) Multiple *bona fide* disputes remained at the time of settlement.

The settlement is not the result of collusion or fraud between the parties.  It is instead the product of an arm's length negotiation that took place in the presence of and with the Court's assistance.  Voluntary participation in settlement discussions such as these are "highly indicative of fairness." *In Re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007). The absence of collusion is further reflected by the lengthy docket, reflecting years of contentious litigation.  *See supra* Facts Part I.  This fierce advocacy certainly evidences a *bona fide* dispute free of fraud or collusion.

B)    **The Settlement Reflects a Reasonable Compromise of Claims and Defenses.**

Like any settlement, this resolution represents a compromise—an evaluation of uncertainties in law and fact.  Defendants are paying more than it thinks the claims are worth, and Plaintiffs are accepting less.  Leading up to this arrangement, Counsel for the parties at all times vigorously pursued their respective positions and the rights of their clients, and engaged in extended legal and factual analysis,

discovery, damages analysis, trial preparation, and good faith, arms-length settlement negotiations. Armed with this knowledge, the parties weighed this Settlement against the uncertainties of continued litigation and concluded that this resolution was preferable.

Plaintiffs specifically recognize the uncertainties inherent in a jury trial. The jury could, for example, restrict damages to the shifts depicted on the sign-in sheet data and reject Plaintiffs' testimony about time worked during the shifts that are not documented in available sign-in sheets. Instead, the settlement allocation contemplates some time worked during shifts with missing sign-in sheets. The jury could also find that Defendants did not willfully violate the law, and instead relied on attorney advice in classifying their entertainers, thereby limiting recovery to the two-year statutory of limitations period, barring nine (9) Plaintiffs, who did not work during this shorter period, from recovery completely and further reducing the damages awarded for the remaining Plaintiffs. (Bailey Decl. ¶ 13.) The settlement allocation, on the other hand, disburses funds according to the longer three-year statute of limitations period. Last, there is no guarantee that Plaintiffs would be rewarded full liquidated damages at trial. Yet, Plaintiffs considered an award of liquidated damages when negotiating the Settlement, and the Agreement treats half of the Net Settlement Amount as funds allocated to settle claims for liquidated damages.

Although both parties continue to firmly believe in the merits of their respective claims and defenses, they agree that a compromise is appropriate here. It permits them to calculate and award damages based on the parties' analysis of the existing records and Plaintiffs' testimony, rather than leaving that uncertainty to a jury less familiar with the issues, the law in this area, and the math calculations at issue.   In view of the costs, risks, and delay associated with trial, post-trial motion practice, and potential appeals, this Settlement is in the best interests of the parties and represents reasonable and adequate resolution of the Action.

C)     **The Settlement Is Fair.**

The Settlement is fair.  It provides Plaintiffs with 59% of their three-year liquidated damages, after apportioning out funds to cover attorneys' fees and costs. The agreement provides an additional $8,500 in service awards to the most actively participating Plaintiffs.   Altogether, the Agreement provides strong recovery particularly since the issues of willfulness, liquidated damages, and the quantity of damages all remained to be tried.  The Settlement is further fair because the funds are allocated to each Plaintiff according to her own damage estimate, using her dates of employment, her sign-in sheet data, and her good-faith estimates rather than using some less exact mechanism of distribution.

Plaintiffs must wait a year and a half to completely receive their allocations, but this payment schedule was crucial to allowing Plaintiffs to obtain maximum

recovery.   To ease the risk associated with future payments, the Settlement includes a confession of judgment so that Plaintiffs may meaningfully enforce the terms of the Agreement if necessary.   The Settlement release is also fair.   As is preferred by the courts, the release narrowly addresses the claims presented in this action, rather than broadly dispose of un-litigated issues.

The best evidence that the Settlement provides a fair resolution to the claims is evidenced by the Plaintiffs acceptance of its terms.   All twenty-eight (28) Plaintiffs responded and consented in writing to the Settlement.   The Court should therefore approve this Agreement as a fair, reasonable, and adequate resolution to the parties' *bona fide* dispute.[8]

---

[8] Some courts prefer to analyze fairness of an FLSA collective settlement by using Rule 23 factors.  *See, e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citation omitted); *Carmen Martinez v. Excel Hosp., LLC*, No. 1:16-CV-1493-WSD, 2017 WL 359818, at *2 (N.D. Ga. Jan. 24, 2017) (citation omitted).  These include considering: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel.  *Prieto*, 2017 WL 359220, at *1.  There is a "strong presumption" in favor of finding a settlement fair under these factors. *Cotton*, 559 F.2d at 1331.  As detailed above, (1) there is no evidence of fraud or collusion **as this settlement resolves a *bona fide* dispute, and it was reached in the presence of t**he Court.  (2) The parties have been litigating for three years already, and could have experienced several additional years of post-trial briefing and appeals if they did not settle.  (3) The settlement occurred on the eve of trial and after complete discovery, and so the parties were fully informed on the issues at the time of settlement.  (4) While Plaintiffs did succeed on the merits of much of their claims, they faced further risk on appeal and also with the evaluation at trial relating to time worked when no records exists, the

II)   **THE ATTORNEYS' FEES AND COSTS REQUEST IS FAIR AND REASONABLE.**

Plaintiffs seek approval from the Court that Plaintiffs' Counsel's request for attorneys' fees and out-of-pocket litigation costs are reasonable.  Under the FLSA, the court "shall in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases.  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  Plaintiffs here prevailed on the primary issue of their case: whether they qualify as employees under the FLSA, and are thus entitled to recover a reasonable fee and cost under the statute.

What constitutes a reasonable fee is within the sound discretion of the district court.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The amount of fees that constitutes a reasonable attorneys' fee "must be determined on the facts of each case." *Ford v. Tennessee Senate*, 2008 WL 4724371, at *5 (W.D. Tenn. Oct.

---

likelihood that their claims would be limited to the two-year period, and the likelihood they would not receive full liquidated damages.  (5) The recovery allocated to Plaintiffs is strong, providing more than 100% of their three-year unliquidated damages.   (6) It is the opinion of Plaintiffs' counsel that this agreement is fair, reasonable, and adequate and in the best interest of the parties.

24, 2008) (citing *Hensley*, 461 U.S. at 429); *see also Lytle v. Lowe's Home Centers, Inc.*, 2014 WL 6469428, at *2–3 (M.D. Fla. Nov. 17, 2014) (noting courts are afforded broad discretion in addressing attorney fees issues and may consider a number of factors).

A)   **Common Fund**

In common fund cases, the percentage method to calculate attorneys' fees can be used.  *See generally Camden I Condo. Ass'n., Inc. v. Dunkle,* 946 F.2d 768, 773 (11th Cir. 1991) (approving percentage of the fund method of calculating fees); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014); *see also Lytle*, 2014 WL 6469428, at *2–3; *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013).   A fee is reasonable if it is adequately compensatory to attract competent counsel, but does not produce a windfall for attorneys.  *Kritzer v. Safelite Sol., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 20, 2012) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897(1984)).

Here, the Settlement Agreement provides for Plaintiffs' Counsel to seek an award of one-third of the total settlement amount for reasonable attorneys' fees ($366,666.67) and out-of-pocket litigation costs ($61,559.83)[9].   (Settlement, Ex. 1.)   This is no windfall.   As detailed below, Plaintiffs' Counsel have expended

---

[9] $1,000 of this is allocated for future settlement administration costs.

significantly more than what they are seeking, to reach the successful results they have obtained here for their clients. The amount sought is reasonable and should be approved for the reasons below.

First, the requested fees are fair and reasonable in light of the significant results Plaintiffs' Counsel achieved for the entertainers through their litigation efforts. They prosecuted this case aggressively and effectively, which resulted in substantial monetary relief for Plaintiffs. During litigation, Plaintiffs' Counsel gathered the necessary information regarding the merits of Plaintiffs' claims and Defendants' defenses, interviewed and communicated with each Plaintiff, prepared for and attended each deposition Defendants took, took several key defense witness depositions, and fought vigorously to obtain information to reasonably calculate damages. Further, Plaintiffs' Counsel prevailed on a motion for partial summary judgment, and filed several motions in limine and a motion for a trial plan, while fully preparing their case and clients for trial. They litigated this case, up to the eve of trial, and continue to litigate it through this settlement approval process. Further, Plaintiffs' Counsel will manage this case and their clients for a few more years, as settlement payments contemplated by the Settlement Agreement extend via payments over thirty (30) months.

Second, the total requested attorneys' fees of one-third of the total settlement amount is a reasonable contingency recovery for this case. Plaintiffs' Counsel took

this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of one-third of any settlement.  (Bailey Decl. ¶ 20.)  Because of this contingency fee arrangement, Plaintiffs' Counsel has not received payment for any of their time litigating the case over the past three years, nor have they received reimbursement for their out-of-pocket costs expended.  Regardless, Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful litigation and Defendants' inability to pay, in an effort to recover minimum wages for workers in an industry that has long gone unnoticed when it comes to minimum wage protection.  Further evidence of reasonableness of the contingency is that all Plaintiffs agreed to the settlement, being fully informed of the attorneys' fees and costs being sought for approval.

Notably, courts routinely approve similar contingency agreements in the amount of one-third, including this Court in *Henderson v. 1400 Northside Drive, Inc.*, Case No. 1:13-cv-3767-TWT, and it is fair and reasonable to do so here as well.  *See e.g*, *Wreyford*, 2014 WL 11860700, at *1 (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington*, 2013 WL 6022972, at *6 (adopting the percentage-of-the-common fund approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of*

*Fort Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (finding 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%); *Faican v. Rapid Park Holding Corp.*, 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (approving fee award of 33 1/3 percent in FLSA action); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving attorneys' fees of one-third in FLSA case).

B)   **Separate Negotiations**

Plaintiffs are aware, however, of cases in this circuit scrutinizing FLSA settlements wherein attorneys' fees and payments to Plaintiffs were negotiated "simultaneously." *See*, *e.g.*, *Martin v. Huddle House, Inc.*, No. 2:10-CV-0082-WCO, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011). Plaintiffs note that *Martin* and the cases cited therein did not involve "common fund" collective action settlements, but rather simultaneous negotiation of payments to individual plaintiffs and separate payments to the attorneys. *Martin* involved a settlement which netted the plaintiff's counsel $8,500 and only provided $6,500 in payments to the plaintiffs. Likewise, cases citing *Martin* for the suggestion that fees should be negotiated separately from wages do not involve common fund settlements of collective actions. *See*, *e.g.*, *Marshall v. Good Vocations, Inc.*, No. CV 111-200, 2013 WL 394389, at *1 (S.D. Ga. Jan. 31, 2013); *Barnes v. Ferrell Elec., Inc.*,

2013 WL 5651903, at *2 (S.D. Ga. Oct. 16, 2013). Accordingly, Plaintiffs respectfully submit that it is entirely proper to settle an FLSA collective action for a common fund.

Nevertheless, the parties settled this case in two phases; first the parties negotiated a value attributed to Plaintiffs' damages. (Bailey Decl. ¶ 19.) Second, and only after that settlement amount was finalized, the parties negotiated the payment of fees and costs. (*Id.*)  The value the parties attributed to Plaintiffs' claim for attorneys' fees and costs was actually substantially greater than the 1/3 recovery Plaintiffs' counsel seeks now.  Thus, much of the money negotiated for fees is actually going to the plaintiffs themselves, not their attorneys.  Thus, under *Martin*, there is "no need to independently scrutinize the reasonableness of attorney's fees provided in a FLSA settlement if and only if 'the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff." *Martin*, 2011 WL 611625, at *2 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)). The Court should therefore approve Plaintiffs' Counsel's fees and costs as submitted and requested, since they were negotiated separately and without regard to the amount attributed to Plaintiffs.

C)   **Lodestar Cross Check**

In the event the Court is inclined to review Plaintiffs' fees and costs,

however, Plaintiffs provide information sufficient for it to do so. Plaintiffs' costs are outlined in Exhibit 4[10] and a summary of Plaintiffs' fees is provided in Exhibit 5[11]. The Court can use this information to determine that the fund requested is reasonable. *See, e.g., Febus v. Guardian First Funding Grp.,* LLC, 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012); *see also Heath v. Hard Rock Cafe Int'l (STP), Inc.*, 2011 WL 5877506, at *3 (M.D. Fla. Oct. 28, 2011) (approving one-third of settlement amount for attorneys' fees after cross-checking plaintiffs' counsel's lodestar, determining attorneys were receiving less fees than their lodestar and thus their fees did not taint the settlement).

The Settlement allocates $61,559.83 to satisfy the litigation costs Plaintiffs' Counsel advanced. This has been a costly case, with the bulk of the costs attributable to depositions and tax return fees ($18,480.07, or 30% of costs), travel related to depositions and trial prep ($30,874.46, or 51% of costs), and case administration such as photocopies, postage, and legal research ($9,410.30, or over 15% of costs). (Costs Summ., Ex. 4.) These costs are typical of the types "normally charged to a fee-paying client, in the course of providing legal services" in a wage and hour case. *Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 124 (D.D.C. 2014). Further, the awarding of costs comports with the purpose

---

[10] Defendants presume Plaintiffs prepared the exhibit in good faith and do not object.

[11] Defendants presume Plaintiffs prepared the exhibit in good faith and do not object.

of the FLSA, which contemplates that the "wronged employee should receive his full wages… without incurring any expense for legal fees or costs." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). These costs were necessary to zealously advocate for Plaintiffs in this matter and obtain a fair result. Defendants do not oppose this request for reimbursement of out-of-pocket costs.

Plaintiffs have over $1,210,000 in time (over 3,780 hours) litigating this action for over more than three years. (*See* Fees, Ex. 5.)[12] This is significantly more than provided under this agreement. The Court should therefore approve the requested percentage. Defendants do not oppose this attorneys' fees request.

Further, Plaintiffs' Counsel's experience and firm reputation supports the lodestar cross-check analysis as well. Nichols Kaster, PLLP is renowned for its national wage and hour class and collective action practice. (*See* Firm Resume, Ex. 6.) Paul Lukas, who was the primary partner leading up to trial, garners close to 30 years of litigation experience, focusing almost exclusively on national wage and hour litigation over the past 17 years. (Firm Resume, Ex. 6.) Lukas has tried nearly 50 cases to verdict, including wage and hour collective actions, and is a frequent national speaker. (*Id.*)

Rebekah Bailey acted as lead counsel since the inception of this litigation. Bailey has litigated wage and hour class and collective actions for nine years and

---

[12] Plaintiffs can submit the billable hours details for each attorney and staff member if necessary.

recently became a partner at Nichols Kaster, PLLP.  (*Id.*)  Partners Michele R. Fisher and Anna P. Prakash also contributed significantly to this litigation.  (*Id.*) Together, these four attorneys have experience representing exotic dancers specifically in wage and hour matters.  (Bailey Decl. ¶ 22.)  Given their experience, the hourly rate of each of these attorneys as set forth in the accompanying declaration is reasonable.  *See generally Willoughby v. Youth Villages, Inc.*, 2016 WL 7013537, at *2, --- F. Supp. 3d ----, (N.D. Ga. Nov. 30, 2016) (concluding hourly rate of $400 reasonable for attorney with twenty-two years of experience and citing other cases finding the same); *Butz v. Amware Distrib. Warehouses of Georgia, Inc.*, 2014 WL 6908393, at *2 (N.D. Ga. Dec. 8, 2014).

For all of the above reasons, the Court should approve the allocated attorneys' fees and litigation costs.

## III)   SERVICE PAYMENTS SHOULD BE APPROVED.

Under the terms of the Settlement Agreement, the parties have allocated and are requesting approval for a service payment for the lead named Plaintiffs in the amount of $3,000.00 total, $1,000.00 each.  This is in recognition of their agreement to pursue this case on behalf of themselves and others, and for the significant time and effort the named Plaintiffs spent assisting Plaintiffs' Counsel through numerous meetings, calls, and emails, as well as attending depositions of

the defendant and mediation.  (Bailey Decl. ¶ 2.)  The parties also allocated $500 to each Plaintiff who prepared for and sat for depositions in this matter, which not only benefited their own individual claims but also the remaining collective action members who did not themselves have to testify as a result of the deposed Plaintiffs' active participation.

These service payments are fair and reasonable and the parties respectfully request they be approved.  *See, e.g.*, *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *4–5 (D. Conn. July 31, 2014 (approving $10,000 incentive award, and identifying cases awarding similar or higher amounts); *Whittington*, 2013 WL 6022972, at *6 (approving $7,500.00 service award); *Torres v. Gristede's Op. Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000 service award); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677–78 (S.D. Iowa 2009) (approving $10,000 service payment); *Su v. Elec. Arts, Inc.*, 2006 WL 4792780, *5 (M.D. Fla. Aug. 29, 2006) (approving $10,000 service payment); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that service payments are "particularly appropriate in the employment context" when the named plaintiff is a "former or current employee of the defendant . . . by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

## CONCLUSION

This FLSA collective action Settlement is a product of an arms-length negotiation resolving a *bona fide* dispute over minimum wages and overtime. The settlement is fair and reasonable, provides Plaintiffs with significant monetary relief, and has the approval of all 28 Plaintiffs. Accordingly, the parties request that this Court grant this motion so the first payment may be promptly issued, and dismiss the action with prejudice.

Respectfully submitted.

Date:   May 15, 2017                    **NICHOLS KASTER, PLLP**


*/s/ Rebekah L. Bailey*
Paul J. Lukas*
Michele R. Fisher
Anna Prakash*
Rebekah L. Bailey*
Robert L. Schug*
Jason D. Friedman*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
lukas@nka.com
bailey@nka.com
*admitted pro hac vice

**MAYS & KERR, LLC**
John L. Mays, GA Bar No. 986574
Meredith J. Carter, GA Bar No. 325422
Suite 202, North Tower
235 Peachtree Street N.E.

Atlanta, GA 30303
john@maysandkerr.com
meredith@mcarterlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiffs certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B).

Dated:  May 15, 2017                          */s/ Rebekah L. Bailey*
                                             Rebekah L. Bailey

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the foregoing

**MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR
APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF ACTION**

with the Clerk of Court and served a true and correct copy of the same by

electronic mail on the following counsel of record:

FREED HOWARD LLP
Gary S. Freed, GA Bar No. 275275
F. Beau Howard, GA Bar No. 142641
101 Marietta Street NW
Suite 3600
Atlanta, Georgia 30303
Office: (407) 839-9300
gary@freedhoward.com
beau@freedhoward.com

Dated: May 15, 2017                    /s/ Rebekah Bailey
                                       Rebekah Bailey